**Jack D. COLLINS and Dorothy E. Collins, Plaintiffs,**

**v.**

**WILMINGTON MEDICAL CENTER, IN-CORPORATED and George N. Eriksen, Jr., M.D., Defendants.**

Superior Court of Delaware, New Castle.

Oct. 5, 1973.

C. Waggaman Berl, Jr., Wilmington, for plaintiffs.

Victor F. Battaglia, Biggs & Battaglia, Wilmington, for defendant Dr. Eriksen.

Rodney M. Layton, and Jane R. Roth, Richards, Layton & Finger, Wilmington, for defendant Wilmington Medical Center.

TAYLOR, Judge.

Defendants have moved for summary judgment on the ground that this action was not filed within the statutory period permitted by the applicable statute of limitations. The action was filed on December 18, 1972.

The series of medical treatments for which plaintiff sues defendant Dr. George W. Eriksen, Jr. [Dr. Eriksen] and Wilmington Medical Center, Inc. [Center] commenced on August 21, 1970 when Dr. Eriksen treated plaintiff at the General Division of Center for a serious cut on plaintiff's right wrist. Dr. Eriksen sutured the cut and placed the arm in a cast. Plaintiff remained at the hospital for three days. Plaintiff wore the cast for six weeks. Dr. Eriksen then recommended that plaintiff take 12 weeks of therapy to strengthen her hand and fingers. Because of pain which plaintiff was suffering in her fingers, Dr. Eriksen performed a sympathectomy operation to remove certain nerves running to plaintiff's fingers on November 1, 1970. When the pain persisted subsequent to the operation, Dr. Eriksen told plaintiff that there was nothing else that he could do and referred her to Dr. Pierre LeRoy on December 2, 1970. Plaintiff first saw Dr. LeRoy on December 9, 1970. X-rays were taken of plaintiff's hand at Dr. LeRoy's request on December 10, 1970. This action was filed on December 18, 1872.

The applicable statute of limitations, 10 Del.C. § 8118, forbids an action for recovery of damages upon a claim for alleged personal injuries to be brought "after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained . . .". The issue is whether this action, brought on December 18, 1972, was brought within the required 2 year period. The key issue is when the 2 year period commenced to run.

In Layton v. Allen, Del.Supr., 246 A.2d 794 (1968), the Delaware Supreme Court held that in a medical malpractice case under certain defined conditions the statute would run not from the date of injury but from the date the harmful effect first manifested itself and became physically ascertainable. The factual limitations were that there must be an inherently unknowable injury, and that the plaintiff must be blamelessly ignorant of the act or omission and injury complained of and that the harmful effect thereof developed gradually over a period of time. For purposes of this consideration, it is sufficient to assume that plaintiff has met the above qualifications of Layton. Under Layton, when the above qualifications have been met, the injury is "sustained" when the harmful effect first manifests itself and becomes physically ascertainable. Concerning this phrase, the Court stated: "Translated in the terms of this case we hold that the limitations period commenced to run when the plaintiff first experienced pain caused by the unknown foreign object."

From the record in this case, it is clear that following the last surgery performed by Dr. Eriksen upon plaintiff, plaintiff was suffering from pain on December 2, 1970, when Dr. Eriksen referred plaintiff to Dr. LeRoy because Dr. Eriksen was unable to cope with the matter further. Hence, plaintiff was aware of the unsuccessful nature of Dr. Eriksen's final treatment as early as December 2, 1970.

■ It is true that plaintiff had not exhausted the possibility of cure by December 18, 1970. However, the commencement of the running of the statute of limitations does not depend on incurability. Rather, the test is when the condition manifested itself to the degree that a plaintiff might reasonably be expected to be aware of the condition—in the words of the Supreme Court in Layton, when the harmful effect first manifested itself and became physically ascertainable. Applying the test of Layton to the facts of this case, the 2 years

statute of limitations began to run at least be December 2, 1970.[1]

■ Plaintiff also contends that the statute of limitations did not commence to run while the physician-patient relationship continued between plaintiff and Dr. Eriksen. Plaintiff contends that this issue was not decided in Layton v. Allen, supra, and hence the law has not been settled in this State on this point. It is true that in *Layton,* plaintiff's discovery of her injury occurred subsequent to the termination of the physician-patient relationship, and hence, since the Court held that the statute did not begin to run until the injury was discovered, the Court was not there called upon to decide this point. Plaintiff cites 61 Am.Jur.2d 312, Physicians, Surgeons, etc., § 185, and 80 A.L.R.2d 368, 379, in support of the proposition that the statute of limitations does not commence to run until the termination of the physician-patient relationship. 61 Am.Jur.2d 312, Physicians, Surgeons, etc., § 185 deals with the "continuing treatment" of the patient by the physician. The section begins with the following statement:

"It has been held that the statute does not commence running until treatment by the physician or surgeon has terminated, where the treatment is continuing and of such nature as to charge the medical man with the duty of continuing care and treatment which is essential to recovery until the relation ceases . . . "

That section, by its terms, applies where the treatment is continuing and of such nature that the doctor is charged with a duty of continuing care and treatment. The undisputed facts in this case do not fall within that category. The record is that on December 2, 1970, Dr. Eriksen told plaintiff that her condition was "sympathy pains and there was nothing else he could do". At that time he referred plaintiff to Dr. LeRoy and plaintiff was not treated by Dr. Eriksen thereafter. Plaintiff has not seen Dr. Eriksen since that time. Thereafter, Dr. LeRoy performed an operation on plaintiff's wrist and treated plaintiff. An affidavit by Dr. LeRoy indicates that he alone treated plaintiff after December 9, 1970 and that he did not consider plaintiff to be Dr. Eriksen's patient thereafter.[2] Nothing in the record indicates that either plaintiff or Dr. Eriksen considered that the physician-patient relationship existed between them after December 2, 1970. Hence, neither treatment nor relationship existed after that date.[3]

■ The proposition for which plaintiff contends is not acceptable for another reason in this case. Plaintiff cites 80 A.L.R.2d 368, 379, for the proposition that the statute of limitations does not commence to run until the termination of treatment by the defendant physician. While this proposition has been accepted in some states in contrast to the proposition that the statute of limitations commences to run at the time of the physician's

---

1. Plaintiff does not contend that Dr. Eriksen concealed the facts of plaintiff's condition from her.

The complaint also alleges permanent injury to plaintiff's chest and right lung. The brief filed by plaintiff in connection with this motion for summary judgment has not distinguished plaintiff's discovery of this condition from that of the condition involving plaintiff's fingers and the Court's attention has not been directed to record facts relating to plaintiff's discovery of this condition.

Accordingly, the Court will consider that plaintiff's discovery of the chest and lung condition antedated her final conference with Dr. Eriksen on December 2, 1970.

2. Dr. LeRoy did send a copy of a medical report to Dr. Eriksen in March, 1971, but nothing in the record indicates that this was done at the instigation of either plaintiff or Dr. Eriksen.

3. Center contends that its relationship with plaintiff ceased November 1, 1970. The complaint alleges that Dr. Ericksen was an agent or employee of Center and that his alleged negligence is imputed to Center. In view of the conclusion reached, it is unnecessary to consider whether the statute of limitations commenced to run on November 1, 1970.

wrongful act or omission, it is stated at pages 383–384 of that annotation that, as an exception to the general proposition just stated, where the patient discovers the facts indicating a wrongful injury during the period of treatment, the statute of limitations commences to run from the time the patient discovers the pertinent facts even though the physician's treatment may continue thereafter. Under the facts of this case, patient was aware on December 2, 1970 that Dr. Eriksen had exhausted his capability of correcting the nerve condition and at least as of that date was aware of the existence of the injury.

For the foregoing reasons, the Court finds that the applicable 2 year statute of limitations had run prior to the commencement of this action as to each defendant.

Accordingly, summary judgment will be granted in favor of each defendant against plaintiff.

It is so ordered.