JAROSZ v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 50615. Submitted April 22, 1981, at Detroit.—Decided
September 8, 1981. Leave to appeal applied for.

Joseph W. Jarosz was injured in an automobile accident and was
unable to return to his job at Borman Foods. Detroit Automo-
bile Inter-Insurance Exchange (DAIIE) paid to Jarosz under a
no-fault motor vehicle insurance policy issued by it work-loss
benefits based upon Jarosz's salary at Borman Foods until
Jarosz was mandatorily retired from Borman Foods at age 65,
at which point work-loss benefit payments were stopped. DAIIE
was thereafter notified that but for the automobile accident
Jarosz would have been employed by Supreme Steel at $200 per
week. DAIIE then began paying work-loss benefits on the basis
of the income Jarosz would have received from Supreme Steel
had he been able to work and continued those payments until
it learned that Jarosz was receiving social security retirement
benefits at a rate which did not reflect the anticipated income
from Supreme Steel. DAIIE tendered to Jarosz work-loss bene-
fits in an amount which was reduced by the difference between
what he had been receiving as social security retirement bene-
fits and the amount he would have received in such social
security benefits if he had been employed and was paid $200
per week. Jarosz refused the tender and brought in Wayne
Circuit Court an action for declaratory relief against DAIIE.
DAIIE moved for summary judgment. Thomas J. Brennan, J.,
granted summary judgment, holding that the defendant could
take into account the social security benefits so that the plain-
tiff would be in the same position as he would have been had
there been no injury. Plaintiff appeals. *Held:*

The intent of the Legislature in enacting the no-fault act was
to require a set-off of those government benefits which dupli-
cate the no-fault benefits payable because of an accident and
thereby reduce or contain the cost of the basic insurance.

References for Points in Headnote

[1] 7 Am Jur 2d, Automobile Insurance §§ 367, 368.
Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

Plaintiff is not entitled to secure, on the one hand, full social security retirement benefits on the basis that he had no outside income that would reduce his social security benefits and, on the other hand, secure full work-loss benefits on the basis that he would have had employment income but for his injury. To the extent that these conflicting positions place him in a better financial position than if he had not been injured, the social security retirement benefits duplicate the work-loss benefits payable under the no-fault insurance policy and, accordingly, to the extent of duplication, the social security benefits may be used to reduce the amount payable as work-loss benefits. Summary judgment was properly granted.

Affirmed.

INSURANCE — NO-FAULT INSURANCE — REDUCTION OF BENEFITS —
SOCIAL SECURITY — STATUTES.

An insurer under a motor vehicle no-fault insurance policy may partially set off against the work-loss benefits payable under the policy social security retirement benefits received by the insured where the no-fault benefits are based upon the income anticipated from post-retirement employment which would have been undertaken but for the covered injury but the social security retirement benefits are not computed on the basis of such anticipated income; in order to avoid duplication of benefits, the no-fault insurer may reduce work-loss benefits to the extent that the social security retirement benefits would have been reduced if the insured had been employed (MCL 500.3109[1]; MSA 24.13109[1]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Michael L. Pitt)*, for plaintiff.

*Dickinson, Pike, Mourad, Brandt & Hanlon* (by *A. J. Galsterer, Jr.)* and *Gromek, Bendure & Thomas* (by *Carl L. Gromek* and *Nancy L. Bosh)*, of counsel, for defendant.

Before: N. J. KAUFMAN, P.J., and ALLEN and D. C. RILEY, JJ.

PER CURIAM. The sole issue raised on this appeal is the propriety of an order of summary judgment entered May 7, 1980, allowing defendant insurance

company to partially offset social security retirement benefits received by plaintiff against work-loss benefits paid under a no-fault insurance policy by defendant to plaintiff. The issue raised is of first impression and involves interpretation of § 3109(1) of the no-fault insurance act, MCL 500.3109(1); MSA 24.13109(1).

On June 27, 1977, plaintiff, then age 64, was a passenger in an automobile which was involved in an accident. As a result of the accident, plaintiff suffered severe bodily injuries which precluded return to his job at Borman Foods, where plaintiff was paid $285 per week salary. Due to plaintiff's inability to continue work, defendant insurance company began paying plaintiff work-loss benefits computed by taking 85 percent of his $285 per week salary. MCL 500.3107; MSA 24.13107. Plaintiff became 65 years of age and on November 1, 1977, was mandatorily retired from Borman Foods. At this juncture, defendant stopped paying plaintiff work-loss benefits. Shortly thereafter, defendant received a letter stating that had it not been for the automobile accident, plaintiff would have begun working at the Supreme Steel Company following his retirement from Borman Foods. Plaintiff would have made $200 per week at Supreme Steel. Defendant than began paying plaintiff work-loss benefits computed by taking 85 percent of a $200 per week salary. MCL 500.3107; MSA 24.13107. Upon learning that plaintiff was also receiving social security retirement benefits which were not computed based upon a $200 per week salary (but rather were computed on the basis that plaintiff was retired and not receiving a weekly salary), defendant tendered to plaintiff work-loss benefits which offset the amount of the difference of the retirement benefits plaintiff was

receiving and the amount of retirement benefits plaintiff would be receiving had he actually been earning $200 per week at Supreme Steel. Plaintiff refused this tender, claiming defendant was not entitled to offset any portion of his retirement benefits against plaintiff's work-loss benefits. Plaintiff now appeals the trial court's finding in favor of the defendant.

Both plaintiff and defendant rely upon *O'Donnell v State Farm Ins,* 404 Mich 524; 273 NW2d 829 (1979), to support their respective positions relative to the intent of MCL 500.3190(1); MSA 24.13109(1). *O'Donnell* states:

"Section 3109(1) of the No-Fault Act requires the subtraction of government benefits from no-fault benefits otherwise due:

" 'Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury.'

\* \* \*

"The history of § 3109(1) indicates that the Legislature's intent was to require a set-off of those government benefits that duplicated the no-fault benefits payable because of the accident and thereby reduce or contain the cost of basic insurance." *O'Donnell, supra,* 539, 544.

Plaintiff claims that social security retirement benefits are not benefits payable "because of the accident" and, as such, cannot be offset against the insurance company's liability for no-fault work-loss benefits which arise directly from the automobile accident. Defendant claims that full payment of retirement benefits, as if plaintiff were not working, and full payment of work-loss benefits, as if plaintiff were working, results in duplication of

benefits which requires a set-off to the extent of the duplication.

This issue is one of first impression in Michigan. We find defendant's rationale persuasive. Although the *O'Donnell* opinion was confined to the facts before the Court (involving social security survivor's benefits) and did not purport to encompass other possible government benefits, *O'Donnell, supra,* 538, the above quoted language concerning the history of § 3109(1) is instructive. This language makes clear that the objective of the § 3109(1) statutory scheme was to provide a more complete and effective coordination of benefits between Michigan automobile insurance and the benefits provided by the laws of all the states and the federal government and that § 3109(1) was framed in terms of maintaining or reducing premium costs for all insureds through the elimination of duplicative benefits recovery. *O'Donnell, supra,* 545. We view the present situation in light of the valid legislative objectives.

Plaintiff's contention that there can be no set-off of social security retirement benefits because these retirement benefits are not payable "because of the accident" does not comport with the objective of § 3109(1). Section 3109(1) does not seek only to set off government benefits that are payable "because of the accident" and are duplicative of no-fault benefits but also seeks to set off all of those government benefits that duplicate no-fault benefits which are payable "because of the accident". As defendant argues, § 3109(1) requires a set-off for all government benefits which duplicate no-fault benefits to the extent of the duplication. Only such an implementation of § 3109(1) will achieve the complete and effective coordination of benefits sought by the Legislature in its attempt to reduce

or contain the cost of no-fault insurance by eliminating benefit duplication.

Applying the above rationale to the facts of the present case, it is clear that under plaintiff's construction of the statute a duplication of benefits would result. Had there been no accident, plaintiff would have earned $200 per week before taxes. Using the statutory presumption of 15 percent tax, MCL 500.3107; MSA 24.13107, plaintiff would have received $170 per week after taxes plus $52.34 per week in social security retirement benefits in the year 1979.[1] 20 CFR 404.430 (1981). This results in an after-tax total of $222.34 per week had there not been an accident. However, because of the accident plaintiff could not work and received $113.80 per week in retirement benefits. To this amount plaintiff wishes to have added the full work-loss benefit of $170 per week (computed as 85 percent of the $200 per week plaintiff would have earned). This would result in a total amount of $283.80 per week or a total of $61.46 per week more than plaintiff would have received had there been no accident. Certainly, duplication exists in this computation by plaintiff. Further, plaintiff's construction of the statute is internally inconsistent. In order to justify his continued receipt of work-loss benefits following his retirement, plaintiff assumes that, but for the accident, he would be able to work at the Supreme Steel Company. But

---

[1] In the year 1979, social security retirement benefits were reduced $1.00 for every $2.00 earned over $4,500. In 1979, plaintiff's earnings on the Superior Steel Company job would have been $10,400 (52 × $200). Subtracting $4,500 leaves an overage of $5,900. Likewise, plaintiff's retirement benefits would have been reduced by one-half of $5,900 which equals $2,950 for the year or $61.46 per week. Social security would have subtracted $61.46 per week from $113.80 per week, the amount plaintiff would have received had he retired or not made over $4,500. Thus, plaintiff would have received $52.34 per week in social security retirement benefits had there not been an accident.

in order to qualify for social security retirement benefits at the full rate of $113.80 per week, plaintiff assumes that he would not be working for Supreme Steel Company, for, under federal law, working at Supreme Steel would reduce plaintiff's social security retirement benefits by $61.46 per week. In our opinion, plaintiff cannot have it both ways.

Defendant contends, and the trial court properly found, § 3109(1) requires the set-off to the extent of the duplication, *e.g.,* $61.46 per week in 1979. Maintaining plaintiff in the position he would have been in had there been no accident does not prejudice the plaintiff and, at the same time, fulfills the valid legislative objectives of § 3109(1). Therefore, we find no error in the trial court's grant of summary judgment in favor of defendant.

Affirmed. Costs to defendant.