STRONG v PONTIAC GENERAL HOSPITAL

Docket No. 54291. Submitted August 20, 1981, at Detroit.—Decided
June 10, 1982. Leave to appeal applied for.

Tracy Strong, a three-year-old girl, was admitted to Pontiac
General Hospital for the removal of her tonsils and adenoids.
Tracy's mother signed a medical malpractice arbitration agree-
ment on Tracy's behalf, which was not revoked within the 60-
day period provided by statute. During the surgery performed
by Rockwood Bullard, M.D., it became necessary to insert a
catheter in Miss Strong's nose to control excessive bleeding.
The catheter was held in place by means of a clamp attached to
the end of Tracy Strong's nose. Subsequent to the surgery, Miss
Strong suffered permanent disfigurement, breathing problems
and emotional problems. Tracy Strong, by her next friend,
Clarence A. Strong, Jr., and Clarence A. Strong, Jr., individu-
ally, brought a malpractice suit in Oakland Circuit Court,
against Pontiac General Hospital and Rockwood Bullard, M.D.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arbitration and Award §§ 8, 9, 97-99.

Constitutionality of arbitration statutes. 55 ALR2d 432.

[2] 46 Am Jur 2d, Judges §§ 98-101, 179, 180.

Disqualification of judge for having decided different case against
litigant. 21 ALR3d 1369.

Interest of judge in an official or representative capacity, or rela-
tionship of judge to one who is a party in an official or represen-
tative capacity, as disqualification. 10 ALR2d 1307.

[3-6] 40 Am Jur 2d, Hospitals and Asylums § 39.

61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 316, 321,
322.

Applicability, to negligence action against hospital, of statute of
limitations applicable to malpractice and related actions against
physicians, surgeons, or the like. 89 ALR2d 1180.

Statute of limitations applicable to malpractice action against
physician, surgeon, dentist, or similar practitioner. 80 ALR2d
320.

When statute of limitations commences to run against malpractice
action against physician, surgeon, dentist, or similar practitioner.
80 ALR2d 368.

[4-6] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 320.

[5] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 232.

The court, Robert L. Templin, J., granted accelerated judgment to the defendants because the claim of Clarence Strong was barred by the period of limitations governing malpractice actions and the claim of Tracy Strong was barred because of the arbitration agreement signed by her mother. The plaintiffs appeal, alleging that the medical malpractice arbitration act is unconstitutional because it requires one of the members of the arbitration panel to be a physician and that the trial court erred in granting accelerated judgment in favor of Dr. Bullard as to the claim of plaintiff Clarence Strong, Jr. *Held:*

1. The trial court's order granting accelerated judgment to the defendants against plaintiff Tracy Strong's claim should be reversed. The entire medical malpractice arbitration act should be declared unconstitutional. The composition of the arbitration panel as prescribed by statute requires that one of its three members be a physician or hospital administrator where a hospital is a sole defendant; this creates a constitutionally intolerable high probability of actual bias against patients who come before the arbitration panel.

2. The trial court erred in granting accelerated judgment in favor of Dr. Bullard as to the claim of plaintiff Clarence Strong, Jr., based upon the period of limitations for malpractice actions. Because Dr. Bullard agreed to pay for the treatment of injuries received by Tracy Strong during surgery, the "last treatment" for purposes of the statute on malpractice was the date of the last treatment by the physician to which Dr. Bullard sent the girl. Although Dr. Bullard did not personally continue treatment, another physician acting at Bullard's behest did continue treatment.

Reversed and remanded.

J. H. Gillis, P.J., dissented. He does not believe that the medical malpractice arbitration act is unconstitutional because it provides that one member of the arbitration panel must be a physician. Furthermore, he believes that the issue of whether Dr. Bullard fraudulently concealed the alleged malpractice by arranging for Tracy Strong's treatment by another physician at no charge and thereby tolled the period of limitations for Clarence Strong, Jr.'s, malpractice action was not preserved for appellate review because it was not raised in the trial court. He believes that the trial court did not err in granting the defendants accelerated judgment. He would affirm.

OPINION OF THE COURT

1. Arbitration — Medical Malpractice.

The Michigan medical malpractice arbitration act unconstitution-

ally deprives a patient of his due process right to a hearing before a fair and impartial tribunal because it requires that one of the members of the arbitration panel be a physician or hospital administrator where a hospital is a sole defendant.

2. JUDGES — DISQUALIFICATION.

A judge or decision-maker should be disqualified on the basis of due process from hearing a case without a showing of actual bias where the judge or decision-maker: (1) has a pecuniary interest in the outcome of the case, (2) has been the target of personal abuse or criticism from the party before him, (3) is enmeshed in other matters involving the parties, or (4) might have prejudged the case because of prior participation as an accuser, investigator, fact-finder or initial decision-maker.

3. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE.

The period of limitations for an action alleging professional malpractice is two years; an action for malpractice accrues at the time that the professional person discontinues treating or otherwise serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim; a cause of action for malpractice may be commenced within six months after the plaintiff discovers or should have discovered the existence of the claim; moreover, where discovery of a claim's existence is hindered by the fraudulent concealment of any person liable for the claim, the action may be commenced within two years after the date of discovery or the date when discovery should have been made (MCL 600.5805[4], 600.5838[1], 600.5855; MSA 27A.5805[4], 27A.5838[1], 27A.5855).

4. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE — LAST TREATMENT RULE.

The purpose of the "last treatment" rule for the limitations period in medical malpractice actions is to permit a patient to continue treatment with a physician after the commission and discovery of misfeasance with the hope that the resulting problem may be remedied without recourse to legal proceedings; such a rule is believed to foster better physician-patient relationships.

5. PHYSICIANS AND SURGEONS — MEDICAL MALPRACTICE — LAST TREATMENT RULE.

Treatment is not continued when a physician merely refers a patient to a second physician for further treatment for pur-

poses of the "last treatment" rule of the limitations period in medical malpractice actions.

DISSENT BY J. H. GILLIS, P.J.

6. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE.

*The period of limitations is two years for an action charging malpractice; a claim for malpractice accrues at the time that a physician discontinues treating or otherwise serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose regardless of the time that the plaintiff discovers or otherwise had knowledge of the claim; a cause of action for malpractice may be commenced within six months after the plaintiff discovers or should have discovered the existence of the claim (MCL 600.5805[4], 600.5838[1]; MSA 27A.5805[4], 27A.5838[1]).*

*Alan G. Greenberg,* for plaintiffs.

*Wilson, Portnoy, Basso & Leader, P.C.,* for defendant Pontiac General Hospital.

*Kerr, Russell & Weber,* for defendant Rockwood Bullard, M.D.

Before: J. H. GILLIS, P.J., and T. M. BURNS and N. J. KAUFMAN, JJ.

PER CURIAM. Plaintiffs appeal as of right the September 20, 1980, lower court orders granting accelerated judgment to defendants.

Plaintiff Tracy Strong was admitted to the defendant hospital on January 29, 1978, for the removal of her tonsils and adenoids. When three-year-old Tracy was admitted to the hosptial, her mother, Loretta Strong, signed a medical malpractice arbitration agreement on her behalf. This agreement was not revoked within the 60-day period provided by statute, MCL 600.5042(3); MSA 27A.5042(3).

On January 30, 1978, the operation was performed on Tracy by defendant Bullard and on February 1, 1978, she was discharged from the hospital.

Plaintiffs' complaint alleges that the adenoid operation was negligently performed and resulted in the permanent disfigurement, breathing problems and emotional problems of plaintiff Tracy Strong. Specifically, plaintiffs alleged in their complaint that during the adenoid operation it became necessary to insert a catheter in Tracy's nose to control certain excessive bleeding. This catheter was held in place by means of a clamp attached to the end of Tracy's nose. Plaintiffs claim that defendant Bullard negligently failed to order the hospital staff to periodically remove the clamp securing the catheter so as to insure an adequate blood flow to Tracy's nose. Plaintiffs state that in addition to Tracy's disfigurement, breathing problems and emotional problems, she will have to undergo plastic surgery as a result of defendant Bullard's negligence.

Prior to the trial, defendants Pontiac General Hospital and Bullard moved for accelerated judgment on the ground that the individual claim for medical expenses of Tracy's father, Clarence Strong, Jr., was barred by the statute of limitations governing malpractice actions. MCL 600.5805(4), 600.5838; MSA 27A.5805(4), 27A.5838. Defendant also argued that the malpractice claim of plaintiff Tracy Strong was barred because of the arbitration agreement signed by her mother. Defendants' motions were granted on September 22, 1980. Plaintiffs now appeal as of right.

Plaintiffs first argue that the R. Hood-McNeely-Geake Malpractice Arbitration Act of 1975 is unconstitutional because it requires that one of the

members of the arbitration panel be a physician. We agree.

The right of a litigant to a fair and impartial tribunal is an interest protected by the Due Process Clause of the Fourteenth Amendment. In *Crampton v Dep't of State,* 395 Mich 347; 235 NW2d 352 (1975), the Michigan Supreme Court identified four situations in which a decision-maker may be challenged and disqualified from hearing a case even where there has been no showing of actual bias: (1) where the decision-maker has a pecuniary interest in the outcome of the dispute, (2) where the decision-maker has been a target of personal abuse or criticisms from a party in the case before him, (3) where the decision-maker is enmeshed in other matters involving one of the parties, and (4) where the decision-maker may have been prejudiced in the case before him because of prior participation as an accuser, investigator, fact-finder or initial decision-maker.

The composition of the arbitration panel as prescribed by statute requires that one of its three members be a physician or hospital administrator where a hospital is the sole defendant. As this Court held in *Jackson v Detroit Memorial Hospital,* 110 Mich App 202; 312 NW2d 212 (1981), and in *Piskorski v Art Centre Hospital,* 110 Mich App 22; 312 NW2d 160 (1981), the requirement that a member of the tribunal be a physician creates a constitutionally intolerable high probability of actual bias against plaintiff-patients who come before the arbitration panel. See also *Morris v Metriyakool,* 107 Mich App 110, 121-140; 309 NW2d 910 (1981) (Bronson, J., *dissenting),* and *Williams v O'Connor,* 108 Mich App 613, 616-624; 310 NW2d 825 (1981) (T. M. Burns, P.J., *dissenting).* Because

the statutory requirement that a member of the panel be a physician cannot be reasonably separated from the remainder of the medical malpractice arbitration act, the entire act must be declared unconstitutional. Therefore, we reverse the lower court order granting accelerated judgment to defendants against plaintiff Tracy Strong.

We also hold that the trial court erred in granting accelerated judgment in favor of Dr. Bullard as to plaintiff Clarence Strong, Jr., based upon the malpractice statute of limitations. The period of limitations for an action alleging professional malpractice is two years. MCL 600.5805(4); MSA 27A.5805(4). Under MCL 600.5838(1); MSA 27A.5838(1), a malpractice action accrues

"at the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim."

Irrespective of the operation of MCL 600.5805(4); MSA 27A.5805(4) and MCL 600.5838(1); MSA 27A.5838(1), a cause of action for malpractice may be commenced within six months after the plaintiff discovers or should have discovered the existence of the claim. Moreover, where discovery of a claim's existence is hindered by the fraudulent concealment of any person liable for the claim, the action may be commenced within two years after the date of discovery or the date when discovery should have been made. MCL 600.5855; MSA 27A.5855.

In the instant case, Tracy Strong was admitted into Pontiac General Hospital on January 29, 1978, for treatment of chronic inflammation of the

tonsils and adenoids. An operation was performed the following day and the child was discharged from the facility on February 1, 1978. Plaintiffs allege that immediately after the operation, Tracy Strong was referred by Dr. Bullard to Dr. Giammarco for treatment of injuries sustained during surgery. Plaintiffs were advised that Dr. Bullard would pay for all of the follow-up care tendered and that the details of the expenses would be worked out between the two doctors. Tracy Strong was treated by Dr. Giammarco until at least March of 1980. The present litigation was commenced on June 4, 1980.

Clearly, this litigation was not timely under the six-month discovery provision of MCL 600.5838(2); MSA 27A.5838(2). When Dr. Bullard referred plaintiffs to Dr. Giammarco and agreed to pay future expenses it should have been readily apparent that a possible malpractice claim existed. For this same reason, the circumstances alleged could not constitute a fraudulent concealment of plaintiffs' claims. Nonetheless, we conclude that Clarence Strong, Jr.'s, cause of action against Dr. Bullard did not accrue until March of 1980, when treatment was last rendered by Dr. Giammarco. By providing for treatment by Dr. Giammarco, Dr. Bullard continued to "otherwise serv[e] * * * in a professional or pseudoprofessional capacity as to the matters out of which" this suit arose.

The purpose of the "last treatment" rule is to permit a patient to continue treatment with a physician after the commission and discovery of misfeasance with the hope that the resulting problem may be remedied without recourse to legal proceedings. Such a rule is believed to foster better physician-patient relationships.

" 'The justification for the termination rule is that it

strengthens the physician-patient relationship. The patient may rely upon the doctor's ability until the relationship is terminated and the physician has the opportunity to give full treatment, including the immediate correction of any errors in judgment on his part. In short, it was thought that the termination rule is conducive to that mutual confidence which is essential to the physician-patient relationship.'

"Thus, to require a patient to file suit for malpractice during the course of treatment for a particular injury or disease when he believes or reasonably should believe that he has a malpractice claim would destroy this mutual confidence in the physician-patient relationship. Such a requirement would place the patient in the unacceptable situation of deciding whether to continue the ongoing treatment and thus risk the chance of forfeiting his right to bring suit at a later date, or terminate the relationship, and, perhaps deny the physician the opportunity of correcting his error." *Ishler v Miller,* 56 Ohio St 2d 447, 449; 384 NE2d 296, 298 (1978).

However, even with this policy in mind, treatment is not continued when a physician merely refers a patient to a second physician for further treatment. *E.g., Florio v Cook,* 65 App Div 2d 548; 408 NYS2d 949 (1978), *Collins v Wilmington Medical Center, Inc,* 311 A2d 885 (Del, 1973). The present situation, nevertheless, involves more than a mere referral. Dr. Bullard, in effect, provided for Tracy Strong's continued treatment my making arrangements for that treatment at his own expense. The situation is analogous to that in *Peters v Gold,* 366 F Supp 150 (ED Mich, 1973). In *Peters,* a professional corporation composed of a number of physicians was treatment as a "person" under the "last treatment" rule. For purposes of the statute of limitations, the cause of action against the corporation accrued as of the last treatment by any of the physicians working for the corporation.

Here, although Dr. Bullard did not personally continue treatment, Dr. Giammarco, acting at Bullard's behest, did.

The policy of the "last treatment" rule is best advanced by this analysis. It is preferable that corrective actions be taken by health care providers when possible without the need for legal recourse. When a physician undertakes such remedial action himself he obviously continues treatment. A subsequent suit for malpractice should be treated no differently when the physician farms out the subsequent remedial treatment at his own expense. To hold otherwise would require patients to choose between foregoing possible corrective measures or foregoing their right to legal relief and thus would encourage patients to view offers of corrective measures with a jaundiced eye. This would hardly be conducive to strong physician-patient relationships. For these reasons, we hold that when Dr. Bullard provided Tracy Strong with Dr. Giammarco's care he continued to "otherwise serve" the patient, and, as a result, plaintiff Clarence Strong, Jr.'s, cause of action, commenced within two years of Giammarco's last treatment, remains viable. The trial court's granting of accelerated judgment in favor of Dr. Bullard regarding Clarence Strong, Jr.'s, cause of action was inappropriate and is therefore reversed.

Reversed and remanded for further proceedings.

J. H. GILLIS, P.J. *(dissenting)*. For the reasons stated by Judge BASHARA in *Brown v Siang,* 109 Mich App 91; 309 NW2d 575 (1981), I disagree with the majority's finding that the medical malpractice arbitration act is unconstitutional.

With respect to the individual claims of plaintiff Clarence Strong, Jr., I am not persuaded that the

lower court erred in granting defendants' motions for accelerated judgment. Pursuant to the provisions of MCL 600.5805(4); MSA 27A.5805(4), "the period of limitations is 2 years for an action charging malpractice". A claim for malpractice accrues at the time that a physician "discontinues treating or otherwise serving the plaintiff in a professional or pseudo-professional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim". MCL 600.5838(1); MSA 27A.5838(1). Subsection 2 of § 5838 further provides that a claim based upon malpractice may be brought at any time within the period of limitations set forth in § 5805 or "within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later".

Plaintiff Clarence Strong, Jr., argues that defendant Bullard fraudulently concealed the alleged malpractice in this case by arranging for Tracy's treatment at no charge, by telling plaintiffs that an attorney was not needed and by telling them that Tracy would have no permanent scarring. Plaintiff Clarence Strong, Jr., contends, therefore, that the fraudulent concealment statute, MCL 600.5855; MSA 27A.5855, tolled the running of the limitations period for the present malpractice action.

After a careful examination of the lower court record, I fail to find where plaintiff Clarence Strong, Jr., raised this argument below. Therefore, this issue has not been preserved for review. *Penner v Seaway Hospital,* 102 Mich App 697; 302 NW2d 285 (1981). I parenthetically note, however, that I am not persuaded by the merits of this argument in any event. The record clearly estab-

lishes that defendants' alleged malpractice oc-
curred on the date of the adenoid operation. Plain-
tiff Clarence Strong, Jr., should have been aware
of the purported negligence at that time or should
have been aware of it at least no later than the
date that defendant Bullard began treating Tracy
at no charge. *Sheldon v Sisters of Mercy Health
Corp,* 102 Mich App 91; 300 NW2d 746 (1980).
Therefore, the lower court did not err in granting
defendants' motions for accelerated judgment with
respect to the claims of plaintifff Clarence Strong,
Jr.