**Wendell WALL and Marian Wall, Plaintiffs and Appellants,**

v.

**Bayard LEWIS and Lewis Law Office, P.C., Defendants and Appellees.**

**Glen WILTSE and Helen Wiltse, Plaintiffs and Appellants,**

v.

**Bayard LEWIS and Lewis Law Office, P.C., Defendants and Appellees.**

Civ. Nos. 11162, 11163.

Supreme Court of North Dakota.

Sept. 30, 1986.

Miller, Norman, Kenney & Williams, Moorhead, Minn., for plaintiffs and appellants; argued by Keith L. Miller, Moorhead, Minn.

Nilles, Hansen & Davies, Fargo, for defendants and appellees; argued by Leo F.J. Wilking, III, Fargo.

MESCHKE, Justice.

The plaintiffs [hereinafter "Doctors"] sued Bayard Lewis and Lewis Law Office, P.C. ["Lewis"] for malpractice. The district court concluded that the applicable statute of limitations had expired and entered summary judgment dismissing the Doctors' actions. The Doctors appeal, and we remand for further proceedings consistent with this opinion.

Between 1969 and 1971, Lewis prepared trust agreements which were intended to shield medical partnership income from taxation. The Internal Revenue Service [IRS] audited the partnership's returns for the years 1972 and 1973, and in 1977 issued deficiency notices to the Doctors. After the Doctors received the deficiency notices their accountant, Gary Valeske, consulted a tax attorney, Douglas Christensen. The Doctors and Valeske met with Christensen, who reviewed with them the various options available to the Doctors. One of the options discussed was a malpractice action against Lewis for his preparation of the trust agreements.

After consulting with Christensen, the Doctors again sought Lewis's advice. He maintained that the trusts were properly drafted and advised the Doctors to sue in federal court to have the IRS assessments overturned. Lewis agreed to represent the Doctors and agreed to waive his fee for doing so if the assessments were not overturned.

On January 1, 1979, Lewis took office as a county judge. On July 2, 1979, Lewis contacted attorney Gerald Rufer and arranged to have Rufer sue the IRS in federal district court on behalf of the Doctors. Lewis agreed to pay Rufer's fees. Rufer brought an action in federal district court seeking to overturn the tax assessments. Although Lewis had a few contacts with the Doctors about the matter after July 2, 1979, Lewis apparently had virtually no contacts with Rufer thereafter. It was Rufer who handled the suit for the Doctors. The suit was finally decided in favor of the IRS on December 9, 1981.

On September 9, 1983, the Doctors commenced separate malpractice actions against Lewis which were subsequently consolidated by stipulation. On July 2, 1984, the district court entered an order striking Lewis's statute of limitations defense. The district court's order was reversed in *Wall v. Lewis*, 366 N.W.2d 471 (N.D.1985).

Lewis subsequently moved for summary judgment. The trial court held that the Doctors should have discovered the injury, its cause, and Lewis's possible negligence by September 1977, and that Lewis's representation of the Doctors ceased on January 1, 1979, when Lewis took judicial office. Thus, taking into account both the discovery rule and the continuous representation rule, the court concluded that the two-year malpractice statute of limitations had already expired when the Doctors sued Lewis in September 1983. The court entered summary judgment dismissing the Doctors' claims, and they appeal.[1]

Issues raised on appeal are:

I. Did the Doctors discover their injury, its cause, and Lewis's possible negligence more than two years before their action was commenced?

II. Did Lewis fraudulently conceal his malpractice?

---

1. The Doctors have appealed from the order for judgment. We have held that when the record contains a later judgment which is consistent with the order for judgment we will treat an appeal from the order as an appeal from the judgment. *Dunseith Sand & Gravel Co. v. Al-* *brecht,* 379 N.W.2d 803, 805 (N.D.1986). Because this record contains a later judgment which is consistent with the order appealed from, we treat it as an appeal from the judgment.

III. Did Lewis's representation of the Doctors cease on January 1, 1979, as a matter of law?

## I. DISCOVERY

The Doctors contend that the trial court erred in concluding that they had discovered, or should have discovered, their injury, its cause, and Lewis's possible negligence more than two years before the action was commenced.

█ In an action brought against an attorney for malpractice, the two-year statute of limitations in Section 28–01–18(3), N.D.C.C., applies. *Wall v. Lewis, supra,* 366 N.W.2d at 473; *Johnson v. Haugland,* 303 N.W.2d 533, 538–539 (N.D.1981). The statute commences to run when the plaintiff knows, or with reasonable diligence should know, of (1) the injury, (2) its cause, and (3) the defendant's possible negligence. *Wall v. Lewis, supra,* 366 N.W.2d at 473; *Phillips Fur & Wool Co. v. Bailey,* 340 N.W.2d 448, 449 (N.D.1983).

In the first appeal, we were presented with a question of when the Doctors had incurred damage. We held that the Doctors had incurred damage "at least by September 29, 1977, the date that the IRS issued its tax deficiency notices." *Wall v. Lewis, supra,* 366 N.W.2d at 474. We further stated:

> "The Doctors assert that because Lewis continued to insist that the IRS position was incorrect and that he had properly drafted the trust agreements, they could not have discovered Lewis' negligence until the federal district court upheld the IRS position on December 9, 1981, and therefore, the statute of limitations did not commence to run until that date. When the Doctors should have discovered Lewis' possible negligence is a question of fact to be determined at a trial on the merits."

Subsequent to our decision on the first appeal, the depositions of Christensen, Valeske, Dr. Wall, and Dr. Wiltse were taken. It is undisputed from this testimony, and the Doctors now concede, that in October of 1977 Christensen suggested the possibility of a malpractice action against Lewis.

The Doctors contend, however, that there is a factual dispute as to whether they knew or should have known of Lewis's negligence prior to December 9, 1981, when their federal court action was dismissed. They argue that they did not follow Christensen's advice, but instead believed Lewis's assertion that the trusts were properly drafted and that the IRS assessments would be overturned in court. Thus, they contend that they did not know or have reason to know of Lewis's possible negligence until the assessments were upheld in federal district court.

The import of the Doctors' argument is that the statute of limitations should not begin to run on a malpractice claim until the plaintiff *subjectively believes* that he has suffered an injury caused by the defendant's negligence. The discovery rule envisions no such result. As enunciated in our prior cases, the rule contemplates that the statute of limitations begins to run when the plaintiff knows, or with reasonable diligence should know, of the injury, its cause, and the defendant's *possible* negligence.

The purpose of the discovery rule is to prevent the injustice of barring a claim before the plaintiff could reasonably be aware of its existence. *See Anderson v. Shook,* 333 N.W.2d 708, 712 (N.D.1983). Thus, the focus is upon whether the plaintiff has been apprised of facts which would place a reasonable person on notice that a potential claim exists. It is not necessary that the plaintiff be subjectively convinced that he has been injured and that the injury was caused by the defendant's negligence.

█ A malpractice plaintiff's knowledge is ordinarily a fact question which is inappropriate for summary judgment, *e.g., Phillips Fur & Wool Co. v. Bailey, supra,* 340 N.W.2d at 449, but the issue becomes one of law if the evidence is such that reasonable minds could draw but one conclusion. *See Belgarde v. Rosenau,* 388 N.W.2d 129, 130 (N.D.1986); *see also Binstock v. Tschider,* 374 N.W.2d 81, 84–85

(N.D.1985). The principle is stated in R. Mallen and V. Levit, Legal Malpractice § 394 (2d ed. 1981):

> "The issue of discovery can become an issue of law where the pleadings or a motion for summary judgment establish that the plaintiff had a general awareness of misconduct by the attorney which pre-existed the statutory period."

■ We caution that summary judgment will rarely be appropriate on the issue of discovery. We conclude, however, that here the undisputed facts establish that the plaintiffs were advised by an attorney that they had a potential malpractice claim, so that these plaintiffs as a matter of law "discovered" the injury, its cause, and the defendant's possible negligence as of that date. We refuse to broaden the discovery rule to allow these plaintiffs to claim that they did not "discover" their possible malpractice action against Lewis until some six years after they had been advised by another attorney to institute such a suit.

## II. FRAUDULENT CONCEALMENT

■ The Doctors also contend that there is a material factual dispute as to whether Lewis's conduct was fraudulent concealment which tolled the statute of limitations. Reviewing the evidence regarding Lewis's conduct in the light most favorable to the Doctors, we find no inference of fraudulent concealment which could toll the statute of limitations. The Doctors' assertions on this issue are without merit.

## III. CONTINUOUS REPRESENTATION

Although we hold that the Doctors discovered their potential malpractice action in October of 1977, we consider whether the two-year statute of limitations was tolled by Lewis's continued representation of the Doctors. The Doctors contend that the trial court erred in holding that, as a matter of law, Lewis's representation ceased on January 1, 1979, when he assumed his judicial office. They contend that the statute of limitations is tolled during the period that Lewis continued to represent them, and that issues of material fact regarding the duration of Lewis's representation remain unresolved.

The continuous representation rule has been adopted in some jurisdictions to toll the running of the statute of limitations for malpractice. We briefly acknowledged the rule in a prior case. *See Binstock v. Tschider, supra,* 374 N.W.2d at 85. We are now called upon to assess the rule's application in this state.

■ The continuous representation rule is an adaptation of the "continuous treatment" or "last treatment" rule applied in medical malpractice cases. As applied in legal malpractice actions, the rule tolls the statute of limitations or defers accrual of the cause of action while the attorney continues to represent the client and the representation relates to the same transaction or subject matter as the allegedly negligent acts.

The earliest application of the rule in a legal malpractice context was in two New York cases, *Wilson v. Econom,* 56 Misc.2d 272, 288 N.Y.S.2d 381 (Sup.Ct.1968), and *Siegel v. Kranis,* 29 A.D.2d 477, 288 N.Y.S.2d 831 (1968). In each case, the court stressed the similarities between the doctor-patient relationship and the attorney-client relationship, concluding that the public policy considerations which justified the rule in a medical malpractice context are equally relevant in a legal malpractice action. The *Siegel* court appropriately summarized these considerations:

> "We believe that the rule is equally relevant to the conduct of litigation by attorneys. The resemblance between the continuous treatment of a condition of a patient by a physician and the continuous representation of a client in a lawsuit by an attorney is more than superficial. In both instances the relationship between the parties is marked by trust and confidence; in both there is presented an aspect of the relationship not sporadic but developing; and in both the recipient of the service is necessarily at a disadvantage to question the reason for the tactics employed or the manner in which the

tactics are executed. The observation made by Chief Judge Desmond in *Borgia [v. City of New York,* 12 N.Y.2d 151, 156, 187 N.E.2d 777, 779, 237 N.Y.S.2d 319, 321 (1962)] that it would be ludicrous to expect a patient to interrupt a course of treatment by suing the delinquent doctor ... holds true as well in the case of a client who has confided his cause to an attorney.

\* \* \* \* \* \*

"We note, too, that a contrary rule concerning the accrual of a cause of action against an attorney for malpractice in the management of litigation might well lead to procrastination by the attorney to postpone the inevitable event of defeat. The author of the disaster should not be enabled to chart the strategy to avoid the liability for his own negligence. Otherwise, negligence could be disguised by the device of delay, and an attorney rewarded by immunity from the consequence of his negligence." *Siegel v. Kranis, supra,* 288 N.Y.S.2d at 834–835.

Commentators have noted additional policy considerations which support the rule:

"The New York courts' reasoning, founded in both practicality and promotion of the integrity of the profession, has led to adoption of the continuous representation rule in several other states. The objectives of the rule maintain consistency with public policy by reducing the burden on the courts while providing fairness to the injured party. Stale claims will be prevented when the plaintiff is not duly diligent following termination of the relationship. In the interim, a claim still in litigation cannot be considered stale. The attorney-client relationship is preserved as fully as possible, guaranteeing the client that the attorney will put forth a better effort to preserve the client's interest. Speculative litigation is also avoided, as clients will not necessarily be required to file suit before the attorney attempts to avoid any damage to the client's interests." Note, *Civil Procedure—Statute of Limitations Accrual in Attorney Malpractice Actions: Thorpe v. De-Ment,* 20 Wake Forest L.Rev. 1017, 1028–1029 (1984) (footnotes omitted).

■ We believe that the continuous representation rule appropriately protects the integrity of the attorney-client relationship and affords the attorney an opportunity to remedy his error (or to establish that there has been no error), while simultaneously preventing the attorney from defeating the client's cause of action through delay. We conclude that it is appropriate to apply the continuous representation rule in attorney malpractice actions in this state.

In this case, the Doctors contend that the determination of when Lewis's representation terminated is a question of fact, and that there is a clear dispute presented by the evidence on this issue.

We have implied in a different context that the determination of the date of termination of an attorney's representation of a client is a question of fact. *See Thomas v. Thomas,* 382 N.W.2d 639, 643 (N.D.1986). In applying the continuous representation rule, courts have generally treated the question as one of fact. *See, e.g., Goodwin v. Schulte,* 115 Mich.App. 402, 320 N.W.2d 391, 395 (1982); *Boorman v. Bleakley, Platt, Schmidt, Hart & Fritz,* 88 A.D.2d 942, 451 N.Y.S.2d 179, 180 (1982); *Brown v. Johnstone,* 5 Ohio App.3d 165, 450 N.E.2d 693, 695–696 (1982). Similarly, courts applying the continuous treatment rule in medical malpractice cases have treated the date of termination of the physician-patient relationship as a question of fact. *See, e.g., Kaufman v. Taub,* 87 Ill. App.3d 134, 141, 410 N.E.2d 114, 120 (1980); *Modzelewski v. Kingsbrook Jewish Medical Center,* 501 N.Y.S.2d 699, 701 (App.Div.1986).

On the present record in this case, it is difficult to assess whether there is an unresolved issue of material fact regarding the termination of Lewis's representation of the Doctors. On one hand, while the trial court held that Lewis's representation terminated as a matter of law when he assumed the bench, this circumstance alone

does not conclusively demonstrate termination of representation because Lewis waited six months thereafter before hiring Rufer to represent the Doctors. Compare *Strong v. Pontiac General Hospital,* 117 Mich.App. 143, 323 N.W.2d 629 (1982), *vacated on other grounds,* 419 Mich. 872, 347 N.W.2d 696 (1984), which held that a physician's hiring of another doctor at his own expense to treat the plaintiff's injuries was continuing treatment by the first doctor under Michigan's statutory "last treatment" rule.

■ On the other hand, more than the two-year statutory period elapsed between Lewis's hiring of Rufer in July 1979 and the commencement of these malpractice actions against Lewis on September 9, 1983. We are unwilling to go as far as *Strong v. Pontiac, supra,* to hold as a matter of law that the representation of the Doctors by the hired second lawyer (Rufer), standing alone, also constitutes continuing representation by Lewis. Therefore, unless the extent or quality of Lewis's contacts with the Doctors or Rufer occurring within the two-year period prior to September 9, 1983, factually indicates legal advice or services to the Doctors by Lewis, summary judgment for Lewis would be proper.

On this appeal record, we are not convinced that there is an unresolved issue of fact regarding Lewis's continuing representation of the Doctors past July 1979. However, the failure of the parties to focus upon the continuous representation theory is perhaps explained by the fact that the depositions were taken prior to our decision in *Binstock v. Tschider, supra,* in which we first acknowledged the continuous representation theory. Counsel for the Doctors has indicated that additional evidence could be available which would sufficiently demonstrate a genuine issue of fact on this matter. In addition, we note that Lewis's counsel also recognized, at the hearing on the summary judgment motion, that the discovery which had been conducted by the parties did not specifically focus on the continuous representation issue:

"[I]f the Court is uncertain on this continuing representation theory perhaps we could have some additional testimony from the doctors and Bayard as to what type of communications existed between the interim when Rufer handled the case."

■ Ordinarily we require a party opposing a motion for summary judgment to provide information by affidavit or through discovery establishing the existence of a genuine issue of material fact. Under the unusual circumstances of this case, in which counsel for both parties have acknowledged that further discovery would clarify the issues, we deem it appropriate to allow the Doctors additional time to develop evidence to support their contention that Lewis's representation continued beyond July 1979. In so holding, we are mindful of the admonition by the United States Supreme Court that "Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them." *Associated Press v. United States,* 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013, 2022–2023 (1945).[2] Rule 56(f), N.D.R.Civ.P., authorizes further discovery proceedings if necessary for full consideration of the motion for summary judgment:

"*(f) When Affidavits are Unavailable.* Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

Courts have liberally construed the identical federal rule to provide relief even where, as here, the party opposing summary judgment has not explicitly invoked Rule

---

2. Because Rule 56, N.D.R.Civ.P., was adopted from the corresponding federal rule, we look to interpretive federal caselaw for guidance in construing our rule. *E.g., Shark v. Thompson,* 373 N.W.2d 859, 863 (N.D.1985).

56(f) nor filed an affidavit as contemplated by that rule. *See Rettinger v. American Can Co.*, 574 F.Supp. 306, 312 (M.D.Pa. 1983); *Michael Rose Productions, Inc. v. Loew's Inc.*, 141 F.Supp. 257, 263 (S.D.N.Y. 1956); *Peckham v. Ronrico Corp.*, 7 F.R.D. 324, 330–331 (D.P.R.1947), *rev'd on other grounds*, 171 F.2d 653 (1st Cir.1948).

Therefore, we remand to the district court with directions that the parties be afforded an opportunity to develop further evidentiary support for their respective positions on the issue of whether Lewis's representation continued into the two-year period prior to September 9, 1983. All parties shall bear their own costs on appeal.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and LEVINE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the opinion written for the court by Justice Meschke. I write separately to note that while I agree that we should adopt the continuous representation rule in North Dakota, I have some questions and concerns about its application. Although the rule appears to be, as characterized by the majority opinion, "an adaptation of the 'continuous treatment' or 'last treatment'" rule applied in medical malpractice cases, I am, at this time, unwilling to adopt the same parameters for the continuous representation rule as apparently have been established for the continuous treatment rule. Although they may, as the New York courts have said in the cases cited in the majority opinion, be equally relevant to the conduct of litigation by attorneys, there are some significant distinctions which may need to be recognized, not the least of which is the condition of the patient in a medical malpractice case and the condition of the client in a legal malpractice case.

But the real issue on the record before us is: When did the attorney-client relationship terminate? In *Brown v. Johnstone*, 5 Ohio App.3d 165, 450 N.E.2d 693, 695 (1982), the court stated that termination occurs when "it is evident that conduct which dissolves the essential mutual confidence between attorney and client signals the termination of the professional relationship." I agree with the majority that the determination of the date of termination of an attorney's representation of a client is a question of fact; that such representation did not necessarily end when Lewis assumed the bench; and that the representation of the plaintiffs by Rufer, who was hired by Lewis, does not alone constitute continuing representation.

Although it is difficult for me to conclude from the undisputed facts in this record that mutual confidence between the plaintiffs and Lewis had not dissolved, we have little or no precedent for the rule in North Dakota and the parties, by their own admission, did not develop the continuous representation rule for consideration by the trial court. Furthermore, the trial court erroneously believed the rule could not apply once Lewis became a judge. I therefore agree with the remand to permit additional discovery if only for the purpose of developing for further review the application of the continuous representation rule in this State.

GIERKE and LEVINE, JJ., concur.