CALDWELL v CLEVELAND-CLIFFS IRON COMPANY

Docket No. 50493. Submitted May 12, 1981, at Marquette.—Decided December 15, 1981. Leave to appeal applied for.

Ronald Caldwell and Paula Caldwell brought an action against the Cleveland-Cliffs Iron Company, Tilden Mining Company, Jones & Laughlin Ore Mining Company, Cleveland-Cliffs Ore Corporation, Bechtel Corporation (Ronald Caldwell's employer), and Industrial Indemnity Company for damages resulting from injuries incurred by Ronald Caldwell in the course of his employment with Bechtel on a construction project involving the other defendants. Following trial, the jury: found that Ronald Caldwell was not negligent, that the defendants were negligent, and that Bechtel was acting as the agent of Cleveland-Cliffs Iron Company, apportioned the blame, and awarded damages to the plaintiffs, Marquette Circuit Court, Edward A. Quinnell, J. All defendants other than Bechtel and Industrial Indemnity filed a claim of appeal. Prior to consideration by the Court of Appeals, these defendants sought leave to appeal in the Supreme Court, which application was denied. *Held:*

1. The trial court did not err in determining that Cleveland-Cliffs Iron Company was liable to the plaintiffs for the entire amount of the damage award. The plaintiffs' remedy against Bechtel is limited by the workers' compensation statute, and, in addition, Bechtel was found to be Cleveland-Cliffs' agent.

2. The trial court properly denied Cleveland-Cliffs Iron Company's motions for a directed verdict and a judgment notwithstanding the verdict. The record reveals that the question whether Cleveland-Cliffs was negligent was for the jury to determine.

3. The trial court properly instructed the jury that Cleveland-

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, New Topic Service, Comparative Negligence §§ 38-42.
22 Am Jur 2d, Damages § 14.
57 Am Jur 2d, Negligence § 435.
Constribution or indemnity between joint tortfeasors on basis of relative fault. 53 ALR3d 184.
[2] 5 Am Jur 2d, Appeal and Error §§ 547, 886.
[3] 3 Am Jur 2d, Agency § 359.

Cliffs Iron Company's liability to the plaintiffs could be based on a principal-agent relationship between Cleveland-Cliffs and Bechtel.

Affirmed.

1. NEGLIGENCE — COMPARATIVE NEGLIGENCE — DAMAGES.

The doctrine of comparative negligence which permits a plaintiff to recover damages reduced to the extent of his own negligent contribution to an injury does not extend to the apportionment of the liability of joint tortfeasors, and where a plaintiff is barred from proceeding against one of multiple tortfeasors because of a statutory limitation of remedies, a remaining tortfeasor found to share in the fault for the plaintiff's injury may be held to be liable for the entire amount awarded for the injury.

2. APPEAL — MOTIONS — NEGLIGENCE.

The Court of Appeals, in reviewing a denial by a trial court of a directed verdict or a judgment notwithstanding the verdict in a negligence case tried by a jury, considers the proofs presented and the reasonable inferences to be drawn therefrom in a light most favorable to the nonmoving party, and where reasonable minds could differ as to whether the defendant was negligent, the question should be decided by the jury, and the trial court's denial should be affirmed.

3. AGENCY — AGENCY RELATIONSHIP — QUESTIONS OF FACT.

A principal is responsible for the acts of his agent where the acts are done within the scope of the agent's authority; the label which parties to an agreement place upon their relationship is not determinative of whether an agency relationship exists; such existence and the scope of a relationship are questions of fact.

*Wisti & Jaaskelainen* (by *Michael E. Makinen),* for plaintiffs.

*Weis & Cossi, P.C.,* for defendants.

Before: D. E. HOLBROOK, JR., P.J., and M. F. CAVANAGH and BEASLEY, JJ.

BEASLEY, J. Defendants, Cleveland-Cliffs Iron Company, *et al.,* appeal as of right from judgments

entered on jury verdicts in favor of Ronald Caldwell, hereinafter plaintiff, against defendants in the sum of $160,000 and the derivative claim of his wife, Paula Caldwell, in the sum of $3,000 for loss of consortium against defendants.

On May 6, 1977, while an employee of defendant Bechtel Corporation, plaintiff was seriously injured when, while helping to steady a crate, it fell from a forklift truck onto him. It was plaintiff's theory that the crate fell because the forks on the forklift truck were "homemade extended forks" which were bent downward. The forklift truck was owned by Bechtel and driven by a Bechtel employee.

Cleveland-Cliffs Iron Company (which, for purposes of this opinion, is referred to as defendant) and Tilden Mining Company were joint venturers in a project to expand and improve an iron ore mine. In a detailed, written contract, Bechtel was described as the manager of engineering and construction on the project, acting subject to the general direction and control of defendant.

This case was heard soon after the decision in *Placek*.[1] Consequently, the trial judge submitted this case to the jury, over objection of both counsel, with special questions under which the jury found: (1) that plaintiff was not negligent, (2) that defendant and Bechtel were both negligent, and (3) that applying the *Placek* apportionment, 75% of the blame was attributable to Bechtel and 25% to defendant. The jury also found that Bechtel acted as an agent of defendant and that $160,000 was the full amount of plaintiff's damage and $3,000 was the full amount of plaintiff's wife's derivative claim for loss of consortium.

Shortly before trial, Bechtel's motion to dismiss had been granted on the ground that plaintiff, as

---

[1] *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979).

Bechtel's employee, had, as his sole remedy against Bechtel, a workers' compensation claim.[2] However, by stipulation on the part of Bechtel and its workers' compensation carrier, made and entered after trial, they accepted the findings of the jury the same as if they had been present during trial.

On appeal, defendant raises three issues.

First, defendant claims that the trial court erred in holding that the adoption of comparative negligence under *Placek* has no effect on the apportionment of damages when liability is joint and several.

Comparative negligence was adopted to alleviate the unfair burden which had been put on plaintiffs under the theory of contributory negligence. Under comparative negligence, a plaintiff is allowed to recover damages less the percentage of fault attributed to him. Under contributory negligence, any negligence on the part of the plaintiff would bar recovery.

Defendant argues that if comparative negligence and joint and several liability are both applied, an unfair burden would be placed on defendants whose negligence has not greatly contributed to the injury of the plaintiff in those cases, such as the present one, where another negligent party is either not a party to the suit or plaintiff is barred from proceeding against that party. Defendant fails to note, however, that the adoption of comparative negligence does not place any greater burden in this regard on an individual defendant than had been present under contributory negligence. Had the present case been tried under contributory negligence, defendant would still have been liable for the entire amount of damages

[2] MCL 418.131; MSA 17.237(131).

since plaintiff was found not to have been negligent and since plaintiff could not proceed against his employer, Bechtel.

The argument is also made by defendant that it is unfair for it to bear the entire burden of compensation to plaintiff for plaintiff's total losses, as determined by the jury. In many situations, defendant's proposition would have merit. But, in this case, defendant's position is eroded by the fact that the jury found that Bechtel was defendant's agent, which appears to make defendant liable to plaintiff for any damage caused plaintiff by Bechtel. In view of the finding that Bechtel was defendant's agent, we reject defendant's claim that it was unfair to hold defendant liable to plaintiff for the entire amount of the jury's verdict.

In *Weeks v Feltner*,[3] where the defendants also had claimed that the doctrine of comparative negligence mandates the abandonment of joint and several liability, the plaintiff sought damages from defendant Feltner (her rapist) and defendant property owners of the apartment which she occupied. The theory of liability against the owners was that negligence in failing to repair and maintain the lock on one of the windows through which Feltner gained entry to plaintiff's apartment was a proximate cause of her rape. After the trial judge denied a motion for directed verdict, the jury decided that recovery should be reduced by 15% for plaintiff's comparative negligence, awarding $200,000 damages against both defendants. This Court denied relief to the defendant property owners, saying:

"Defendants contend that comparative negligence requires that a defendant only be liable to the extent of

[3] 99 Mich App 392; 297 NW2d 678 (1980).

his own wrongdoing, not only in relation to the plaintiff, but in relation to other defendants as well. See *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979).

"This argument ignores the fact that the comparative negligence doctrine also seeks to assure fair and adequate compensation for injured plaintiffs. Unlike the concept of contributory negligence, it avoids unduly penalizing a plaintiff for his own fault. While some unfairness exists when one defendant is held liable for the fault of his codefendants, this is equally true of cases where the plaintiff is not at fault. The acts of Albert Feltner were foreseeable by the other defendants, and there is nothing inherently inequitable in holding them liable for the resulting injury. The doctrine of comparative negligence does not mandate abandonment of joint and several liability. In fact, a majority of other jurisdictions considering the issue have retained joint and several liability. See Schwartz, Comparative Negligence, § 16.4, p 93 (Supp, 1978)."[4]

The within case differs from *Weeks* in that, for whatever the reason, the question of apportionment of the fault went to the jury, and the jury decided that Bechtel was 75% responsible for plaintiff's damages and defendant only 25%.[5]

Defendant also argues that plaintiff has adequate redress against his employer, that is, Bechtel, under workers' compensation law and that to require it to pay the total judgment, namely, $160,000, would afford plaintiff double recovery because that would be in addition to the approximately $40,000 already received in workers' compensation benefits plus any future such benefits paid by the employer. Defendant also points out that the jury has decided that the total amount to which plaintiff is entitled is $160,000.

---

[4] *Id.,* 395.

[5] See also *Edwards v Joblinski,* 108 Mich App 371; 310 NW2d 385 (1981).

The usual answer to the latter argument would be that the workers' compensation carrier of plaintiff's employer (Bechtel) was a silent plaintiff who would receive from plaintiff's jury award all sums paid to or for plaintiff's benefit under the workers' compensation statute. Thus, plaintiff's net ultimate recovery would be reduced by the amount of any such workers' compensation benefits.

In this case, the relationship between defendant and Bechtel in its various capacities, e.g., as plaintiff's employer, defendant's agent, and general contractor, is further complicated by the existence of an indemnity agreement whereby Bechtel indemnifies defendant for liability arising out of the performance of the contract (but not based on the sole negligence of defendant).

On appeal, these issues regarding interpretation of the indemnity agreement and the right to recovery from the award by the workers' compensation insurance carrier are simply not before us. Thus, while we have no way of knowing what their precise effects will be, their existence leads us to deny defendant's claim that we should limit plaintiff's judgment to 25% of the total damages determined by the jury.

Defendant also contends that it was error for the trial court to deny its motion for a directed verdict or, in the alternative, its subsequent motion for judgment notwithstanding the verdict. This issue narrows down to whether or not there was sufficient evidence from which an inference could arise that defendant was negligent.

In reviewing denials of a directed verdict or a judgment notwithstanding the verdict in a negligence case, this Court considers the proofs and reasonable inferences therefrom in a light most favorable to the nonmoving party. If reasonable

minds could differ as to whether the defendant was negligent, the question should not be taken from the jury.[6]

The liability of a property owner for injuries suffered by a worker on a construction job was discussed in *Funk v General Motors Corp,*[7] where the Supreme Court stated:

"Ordinarily a landowner is not responsible for injuries caused by a carefully selected contractor to whom he has delegated the task of erecting a structure. Most every rule has its exceptions. This rule is distinguished by the variety of its exceptions.

"An owner is responsible if he does not truly delegate —if he retains 'control' of the work—or if, by rule of law or statute, the duty to guard against the risk is made 'nondelegable'.

"Inevitably it becomes a matter of judgment, case by case, where to draw the line between so-called 'delegable' and 'nondelegable' tasks and duties. In a given case, the policy question facing a court (the law of torts is largely judge-made) is whether on the facts presented the public interest warrants imposition upon a person who has delegated a task the duty to guard against risks implicit in the performance of the task.

"The immediate employer of a construction worker (Ben Agree, in this instance) is immediately responsible for job safety.

"The question now presented is whether, in the circumstances of this case, the immediate employer having conspicuously failed to provide any safety equipment, this general contractor and this owner, fully knowledgeable of the employer's dereliction, had the responsibility either to require the employer to implement a meaningful safety program or to themselves supply the obviously necessary safety equipment." (Footnotes omitted.)

[6] *Krzysiak v Hinton,* 104 Mich App 134, 138; 304 NW2d 823 (1981), *Dayhuff v General Motors Corp,* 103 Mich App 177, 181; 303 NW2d 179 (1981).

[7] 392 Mich 91, 101-102; 220 NW2d 641 (1974).

The *Funk* Court noted that General Motors had exercised an unusually high degree of control over the project. It drew up the building plans and specifications and acted as architectural supervisor. It hired several of the contractors, wrote the contracts, and later assigned them to the general contractor. General Motors could order the general contractor to terminate any prime or subcontractor and retained the right to hire additional subcontractors and then assign those contracts to the general contractor. General Motors had a representative on the jobsite to interpret specifications and plans for the general contractor. This representative also was to ensure that the general conditions of the contract, which included safety requirements, quality, and performance of the work, were enforced. Based on the above facts, the Court held:

"Collins' [General Motors' representative at the jobsite] supervision over some aspects of accident prevention, coupled with his extensive supervision of other specifications, and General Motors' overall, day-to-day, dominance of the project, supports a finding of, if not actual, at least tacit control by General Motors of safety in the highly visible common work areas.

\* \* \*

"General Motors is subject to liability because a jury could properly conclude that General Motors, despite its designation as owner, retained and exercised sufficient control so that it ought to be held responsible for its own negligence in failing to implement reasonable safety precautions by the general contractor and subcontractor."[8] (Footnote omitted.)

Prior to the closing of plaintiff's proofs in the

[8] *Funk, supra*, 107-108. See also *Erickson v Pure Oil Corp*, 72 Mich App 330, 338-339; 249 NW2d 411 (1976), *lv den* 400 Mich 859; 256 NW2d 574 (1977).

present case, there was extensive testimony on the extent of defendant's control over the project, the circumstances surrounding the accident and whether the accident site could be considered to be a "common work area".

Clarence Rivers, defendant's project engineer, testified that he was responsible for the design of the project and monitoring the construction. He stated that defendant had seven engineers supervising the construction site daily and two other persons monitoring the project. Defendant did not have a safety man on the jobsite.

Mr. Rivers also testified that Bechtel was subject to the general direction and control of defendant, that defendant could stop construction for any reason, and that defendant had the right to approve any of the subcontractors on the job under Bechtel. At least three other contractors were considered by defendant to be general contractors for portions of the total construction project, and each contractor was responsible for its own safety.

There was also testimony that plaintiff's injury occurred in a building on the construction site in a portion assigned to Bechtel for use as a warehouse. The rest of the building was used as a shop area by defendant. Truck drivers, who were not employed by Bechtel, would bring materials into the warehouse portion of the building to be unloaded.

Finally, there was testimony that plaintiff had not been given safety instructions, that the forks on the forklift truck had been bent for at least one month, and that it was common knowledge in the warehouse that the forks were bent.

When the above evidence is viewed in a light most favorable to plaintiff, there is a jury question of whether or not defendant was negligent. We find that the trial judge properly denied defen-

dant's motions for a directed verdict and a judgment notwithstanding the verdict.

Defendant's final claim on appeal is that the trial court erred in instructing the jury that they could find defendant liable for the damages to plaintiff based on a principal-agency relationship between Bechtel and defendant. We disagree.

The term "agent" was defined by the Supreme Court in *Saums v Parfet:*[9]

" ' "Agency" in its broadest sense includes every relation in which one person acts for or represents another by his authority.' 2 CJ, p 419.

" 'Whether an agency has been created is to be determined by the relations of the parties as they in fact exist under their agreements or acts.' 21 RCL, p 819.

" 'The characteristic of the agent is that he is a business representative. His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons. To the proper performance of his functions, therefore, it is absolutely essential that there shall be third persons in contemplation between whom and the principal legal obligations are to be thus created, modified or otherwise affected by the acts of the agent.' 1 Mechem, Agency (2d ed), p 21."

A principal is responsible for the acts of its agent if done within the scope of the agent's authority.[10]

The contract between defendant and Bechtel included the following provisons:

"B. *Procurement*

"As directed by Owner and as Owner's agent, Bechtel shall procure materials, equipment, supplies and related services for construction of the Project, not specified to be furnished by Owner: and as Owner's agent,

[9] 270 Mich 165, 171-172; 258 NW 235 (1935).

[10] *Lincoln v Fairfield-Nobel Co,* 76 Mich App 514, 519; 257 NW2d 148 (1977).

Bechtel also shall perform necessary expediting, inspection and traffic services for Bechtel-procured items. Bechtel shall use its best efforts to obtain for Owner's account all discounts or refunds on Bechtel-procured items in accordance with this Contract. As directed by Owner, Bechtel shall act as Owner's agent in the administration, including expediting, inspection, and traffic services, of purchase orders entered into directly by Owner, and Owner shall notify such vendors of Bechtel's authorization to so act for and on behalf of Owner.

"C. *Construction Management*

"Bechtel will perform Construction Management services for Owner in connection with the Project. Such services shall generally consist of the following and will be more specifically set forth in the Procedure Manual to be prepared by Bechtel hereunder. Bechtel shall:

\* \* \*

"2. As Owner's agent, administer contracts made directly between the Owner and contractors using Owner's Standard General Conditions, and coordinate and inspect the work of contractors as required.

\* \* \*

"5. As Owner's agent, provide non-manual personnel to perform materials inspection, receiving and warehousing for those items not designated to be inspected, received and warehoused by Contractors."

While the label the parties place on their relationship is not determinative,[11] the existence of an agency relationship and the scope of the relationship are questions of fact.[12]

In its brief, defendant acknowledges that the trial court correctly stated the principles of

[11] *Lincoln, supra,* 520, *Universal Life Church, Inc v Comm'r of Lottery,* 96 Mich App 385, 388; 292 NW2d 169 (1980).

[12] *Lincoln, supra,* 520, *Jackson County Education Ass'n v Grass Lake Community Schools Board of Education,* 95 Mich App 635, 639; 291 NW2d 53 (1979).

agency. We find that the proofs at trial presented a question for the jury as to whether Bechtel was acting as defendant's agent at the time of plaintiff's injury and, therefore, that the trial court did not err in instructing the jury that liability could be based on a principal-agent relationship between defendant and Bechtel.

Affirmed.