## WHITMORE v FABI

Docket No. 82470. Submitted December 4, 1985, at Grand Rapids. Decided September 15, 1986.

Helen Whitmore underwent surgery performed by Robert Fabi, M.D., a neurosurgeon, and Ernesto L. Suarez, M.D., a cardiologist, on February 2, 1976. Each doctor performed a separate surgical procedure on Mrs. Whitmore, out of the presence of the other. During Dr. Suarez's surgical procedure, Mrs. Whitmore's brachial plexus was severed. Dr. Fabi returned to the operating room and attempted to repair the damage to the nerve, but was unsuccessful. Dr. Suarez last treated Mrs. Whitmore on July 21, 1976. Dr. Fabi last treated Mrs. Whitmore on July 8, 1977. On May 2, 1979, Helen Whitmore and James Whitmore filed, in Kalamazoo Circuit Court, a medical malpractice action against Dr. Fabi, Dr. Suarez, their respective professional corporations, and Borgess Hospital, alleging, inter alia, that both doctors were individually liable for their own negligent acts, that there also existed reciprocal principal-agent relationships between the doctors, and that each doctor was vicariously liable for the negligent acts of the other. The court, Charles H. Mullen, J., granted partial accelerated judgment in favor of defendants, holding that the claims against Dr. Suarez and his professional corporation based upon his personal negligence and the claims against Dr. Fabi, his professional corporation and Borgess Hospital as principals and based upon the alleged personal negligence of Dr. Suarez were barred

REFERENCES

Am Jur 2d, Limitations of Actions § 470.

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 286, 289, 292, 295, 318 et seq., 361, 362.

Am Jur 2d, Summary Judgment §§ 16, 18, 22, 25.

Statute of limitations applicable to malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 320.

When statute of limitations commences to run against malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 368.

See also the annotations in the Index to Annotations under Agents and Agency; Summary Judgment.

by the statute of limitations. Plaintiff Helen Whitmore appealed.

The Court of Appeals *held:*

1. If plaintiff can prove that Dr. Fabi's postoperative treatment of Mrs. Whitmore was done as an agent of Dr. Suarez, then the period of limitations has not run against Dr. Suarez for his own act of negligence. If plaintiff can prove that Dr. Suarez was the agent of Dr. Fabi, then the period of limitations has not run against Dr. Fabi on plaintiff's claim of vicarious liability based on the act of Dr. Suarez.

2. It cannot be concluded as a matter of law that plaintiffs' claims are barred by the statute of limitations, therefore the trial court's order granting partial accelerated judgment must be reversed.

Reversed.

BEASLEY, P.J., concurred but wrote separately to state that upon remand the trial court, rather than the jury, should decide whether an agency relationship existed between defendant doctors for purposes of the applicable period of limitations.

OPINION OF THE COURT

1. MOTIONS AND ORDERS — ACCELERATED JUDGMENT — LIMITATION OF ACTIONS — JURY TRIAL.

A trial court should grant a motion for accelerated judgment based on a statute of limitations defense where a jury has been requested only where the court can conclude as a matter of law that the plaintiff's claim is barred by the running of the period of limitations.

2. MOTIONS AND ORDERS — ACCELERATED JUDGMENT — LIMITATION OF ACTIONS.

A court when deciding a motion for accelerated judgment based on a statute of limitations defense must accept all well-pled allegations of the nonmoving party as true and, in addition, may consider affidavits submitted by either party (GCR 1963, 116.3; MCR 2.116[G][5]).

3. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE.

An action for medical malpractice may be commenced within two years after the claim accrues or six months after the plaintiff discovers or should have discovered the existence of his or her malpractice claim, whichever is longer; a malpractice action not commenced within the statutory period is barred.

4. AGENCY — QUESTIONS OF FACT.

The existence and scope of an agency relationship are questions of fact for the jury.

5. PHYSICIANS AND SURGEONS — AGENCY — NEGLIGENCE — MEDICAL
MALPRACTICE.

Physicians and surgeons are subject to the law of agency and
therefore may be liable for the negligence or malpractice of
another physician or surgeon acting as an agent.

6. PHYSICIANS AND SURGEONS — MEDICAL MALPRACTICE — LIABILITY
FOR ACTIONS OF OTHERS.

A physician who calls in or recommends another is not liable for
the other's malpractice where there is no agency, concert of
action or negligent selection.

7. PHYSICIANS AND SURGEONS — VICARIOUS LIABILITY.

Physicians who are independently employed or acting indepen-
dently in a case cannot be held vicariously liable; vicarious
liability may be found, however, where the physicians are
jointly employed or acting jointly on a case.

8. LIMITATION OF ACTIONS — PHYSICIANS AND SURGEONS — MEDICAL
MALPRACTICE.

The medical malpractice period of limitations begins to run
against a doctor on the last date of treatment by the doctor or
his agent, whichever comes later.

CONCURRENCE BY BEASLEY, P.J.

9. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE — QUESTIONS OF
FACT.

*The resolution of factual disputes raised in determining whether
the period of limitations applicable in medical malpractice
cases has expired is a matter for the trial judge, not the jury.*

10. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE — QUESTIONS OF
FACT — JURY TRIAL.

*Factual disputes raised in applying the medical malpractice
statute of limitations, just like factual determinations required
for the application of the doctrine of res judicata, do not
involve the right to a jury trial.*

11. MOTIONS AND ORDERS — SUMMARY DISPOSITION — AFFIDAVITS —
COURT RULES.

*A trial judge is expressly required to consider affidavits and other
evidence in deciding a motion for summary disposition based on
allegations that the claim is barred because of release, pay-
ment, prior judgment, immunity granted by law, statute of
limitations, statute of frauds, infancy or other disability of the
moving party, or assignment or other disposition of the claim*

before commencement of the action (MCR 2.116[C][7], 2.116[G][5]).

*Blaske & Blaske* (by *E. Robert Blaske*), for plaintiffs.

*Miller, Canfield, Paddock & Stone* (by *Ronald E. Baylor* and *Dirk J. Holkeboer*), for defendants.

Before: BEASLEY, P.J., and R. M. MAHER and R. L. TAHVONEN,* JJ.

R. M. MAHER, J. Plaintiffs appeal as of right from a trial court order granting defendant's motion for accelerated judgment pursuant to GCR 1963, 116.1(5).

This medical malpractice action arises out of surgery performed on Helen Whitmore by Robert Fabi, M.D., a neurosurgeon, and Ernesto L. Suarez, M.D., a cardiologist, on February 2, 1976. Each doctor performed a separate surgical procedure on Mrs. Whitmore, out of the presence of each other. During Dr. Suarez's surgical procedure, Mrs. Whitmore's brachial plexus was severed. Dr. Fabi returned to the operating room and attempted to repair the damage to the nerve, but was unsuccessful. Dr. Suarez last treated Mrs. Whitmore on July 21, 1976. Dr. Fabi last treated Mrs. Whitmore on July 8, 1977.

Plaintiffs commenced the instant action on May 2, 1979, against Dr. Fabi, Dr. Suarez, their respective professional corporations, and the hospital. In addition to allegations that both Dr. Fabi and Dr. Suarez were individually liable for their own negligent acts, plaintiffs alleged that there existed reciprocal principal-agent relationships between the doctors and that each doctor was vicariously liable

---

* Circuit judge, sitting on the Court of Appeals by assignment.

for the negligent acts of the other. On May 3, 1983, the trial court entered an order granting partial accelerated judgment in favor of defendants, stating that the following claims were barred by the statute of limitations:

> 1. Plaintiffs' claim against Ernesto L. Suarez, M.D. and Kalamazoo Cardio Thoracic Surgery, P.C., his employer, based upon the alleged personal negligence of Ernesto L. Suarez, M.D.
>
> 2. Plaintiffs' claims against Robert Fabi, M.D., Neurosurgery of Kalamazoo, P.C. and Borgess Hospital as the alleged principals of Ernesto L. Suarez, M.D. and Kalamazoo Cardio Thoracic Surgery, P.C. and based upon the alleged personal negligence of Ernesto L. Suarez, M.D.[1]

A trial court should grant a motion for accelerated judgment based on a statute of limitations where a jury has been requested only where the court can conclude as a matter of law that the plaintiff's claim is barred by the running of the period of limitations. When deciding a motion for accelerated judgment, the court must accept all well-pled allegations of the nonmoving party as true. In addition, the trial court may consider affidavits submitted by either party. *Smith v Consengco,* 146 Mich App 401, 405-406; 380 NW2d 478 (1985); *Wallisch v Fosnaugh,* 126 Mich App 418, 424; 336 NW2d 923 (1983), lv den 418 Mich 871 (1983).

The period of limitations for claims of medical malpractice is two years. MCL 600.5805(4); MSA 27A.5805(4). A claim based upon the medical malpractice of a doctor accrues:

---

[1] Plaintiffs' claims against Dr. Fabi based on his personal negligence proceeded to trial. Prior to trial, plaintiffs reached a settlement with Dr. Fabi, but only with respect to the claim based on his own negligence. Plaintiffs continue to seek to hold Dr. Fabi vicariously liable for Dr. Suarez's alleged negligence.

[A]t the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. [MCL 600.5838(1); MSA 27A.5838(1).]

An action for malpractice may be commenced within two years after the claim accrues or six months after the plaintiff discovers or should have discovered the existence of his or her malpractice claim, whichever is longer. MCL 600.5838(2); MSA 27A.5838(2). A malpractice action not commended within the statutory period is barred. *Id.*

Since plaintiffs failed to commence a malpractice action against Dr. Suarez within the statutory period, it would appear that the claim is barred. Plaintiffs argue, however, that the period of limitations is tolled due to the reciprocal agency relationship between the two doctors. Defendants argue that the legal relationship alleged by plaintiffs is not regarded as one of agency. It is well settled, however, that the existence and scope of an agency relationship are questions of fact for the jury. *Michigan National Bank of Detroit v Kellam,* 107 Mich App 669, 678; 309 NW2d 700 (1981), lv den 413 Mich 870 (1982); *Caldwell v Cleveland-Cliffs Iron Co,* 111 Mich App 721; 315 NW2d 186 (1981), lv den 417 Mich 914; 330 NW2d 854 (1983).

Physicians and surgeons, like other persons, are subject to the law of agency. *Barnes v Mitchell,* 341 Mich 7, 19; 67 NW2d 208 (1954). A physician or surgeon may be liable for the negligence or malpractice of another physician or surgeon acting as his agent. *Barnes, supra,* pp 18-19; see, also, Anno: *Liability of one physician or surgeon for malpractice of another,* 85 ALR2d 889. A physician who calls in or recommends another is not liable

for the other's malpractice where there is no agency, concert of action or negligence selection. *Rodgers v Canfield,* 272 Mich 562, 564; 262 NW 409 (1935); *Hitchcock v Burgett,* 38 Mich 501 (1878). Likewise, physicians who are independently employed or acting independently in a case cannot be held vicariously liable. *Brown v Bennett,* 157 Mich 654, 658; 122 NW 305 (1909). Vicarious liability has been recognized, however, where the physicians are jointly employed or acting jointly on a case. See 85 ALR2d 889, 904 and the cases cited therein.

The facts of this case, with respect to the agency relationship of the doctors, have yet to be developed. As the case now stands, it cannot be said as a matter of law that an agency relationship did not exist between Dr. Suarez and Dr. Fabi. Furthermore, the issue on appeal in this case is not whether a reciprocal agency relationship existed, but whether the principal-agency relationship, if proven, tolled the period of limitations with respect to Dr. Suarez.

Plaintiffs allege alternative agency relationships. Plaintiffs first claim that (1) Dr. Suarez was the principal, (2) Dr. Fabi was the agent, (3) Dr. Suarez committed the alleged negligent act, and (4) Dr. Fabi was the last to treat. The issue under this factual background is: When did the period of limitations begin to run against Dr. Suarez, the principal, as a result of his own allegedly negligent act? Plaintiffs argue that the two-year period began to run against Dr. Suarez on the date that Dr. Fabi, the agent, last treated Mrs. Whitmore.

Plaintiffs' alternative factual scenario is that (1) Dr. Fabi was the principal, (2) Dr. Suarez was the agent, (3) Dr. Suarez committed the alleged negligent act, and (4) Dr. Fabi was the last to treat. The question under this factual background is: When

did the period of limitations begin to run against
Dr. Fabi, the principal, as a result of the alleged
negligent act of Dr. Suarez, the agent. Plaintiffs
argue that the two-year period began to run
against Dr. Fabi on the date that Dr. Fabi last
treated Mrs. Whitmore.

We agree with plaintiffs and hold that the pe-
riod of limitations begins to run against a doctor
on the last date of treatment by the doctor or his
agent, whichever comes later. Our holding is the
same whether plaintiffs seek individual or vicari-
ous liability against the principal doctor. We be-
lieve that where an agency relationship exists, a
doctor does not "discontinue treating or otherwise
serving" within the meaning of § 5838 until both
the doctor and his or her agent(s) have discontin-
ued treating or otherwise serving a plaintiff.

Our holding is based in part upon the purpose of
the "last treatment" rule, which is:

> The purpose of the "last treatment" rule is to
> permit a patient to continue treatment with a
> physician after the commission and discovery of
> misfeasance with the hope that the resulting prob-
> lem may be remedied without recourse to legal
> proceedings. Such a rule is believed to foster better
> physician-patient relationships.
>
> "The justification for the termination rule is
> that it strengthens the physician-patient relation-
> ship. The patient may rely upon the doctor's abil-
> ity until the relationship is terminated and the
> physician has the opportunity to give full treat-
> ment, including the immediate correction of any
> errors in judgment on his part. In short, it was
> thought that the termination rule is conducive to
> that mutual confidence which is essential to the
> physician-patient relationship."
>
> Thus, to require a patient to file suit for mal-
> practice during the course of treatment for a
> particular injury or disease when he believes or

reasonably should believe that he has a malpractice claim would destroy this mutual confidence in the physician-patient relationship. Such a requirement would place the patient in the unacceptable situation of deciding whether to continue the ongoing treatment and thus risk the chance of forfeiting his right to bring suit at a later date, or terminate the relationship, and, perhaps deny the physician the opportunity of correcting his error. *Ishler v Miller,* 56 Ohio St 2d 447, 449; 384 NE2d 296, 298 (1978). [*Strong v Pontiac General Hospital,* 117 Mich App 143, 150-151; 323 NW2d 629 (1982).]

The policy of the "last treatment" rule is equally compelling where one doctor is acting as the agent of another. An agent, in the broadest sense of the word, is one who acts for or represents another by his authority. *Mallory v Conida Warehouses, Inc,* 113 Mich App 280; 317 NW2d 597 (1982).

In *Strong, supra,* p 152, this Court stated:

It is preferable that corrective actions be taken by health care providers when possible without the need for legal recourse. When a physician undertakes such remedial action himself he obviously continues treatment. A subsequent suit for malpractice should be treated no differently when the physician farms out the subsequent remedial treatment at his own expense. To hold otherwise would require patients to choose between foregoing possible corrective measures or foregoing their right to legal relief and thus would encourage patients to view offers of corrective measures with a jaundiced eye. This would hardly be conducive to strong physician-patient relationships.

The *Strong* Court held that when the alleged negligent doctor provided the plaintiff, at his expense, with another doctor's care, he continued to

"otherwise serve" the patient. Similarly, we believe that where either member of the principal-agent relationship treats the plaintiff after the allegedly negligent act, the principal doctor continues to "treat or otherwise serve the plaintiff in a professional capacity." Accordingly the two-year period of limitations does not begin to run until both the principal and agent doctors have discontinued treating or otherwise serving the plaintiff for the matter from which the malpractice cause arises.

In the instant case, Dr. Fabi, whether as principal or agent, ceased treating Mrs. Whitmore on July 8, 1977. Plaintiffs' complaint was filed on May 2, 1979, within two years after last treatment by Dr. Fabi. If plaintiffs can prove that Dr. Fabi's postoperative treatment of Mrs. Whitmore was done as an agent of Dr. Suarez, then the period of limitations has not run against Dr. Suarez for his own act of negligence. If plaintiffs can prove that Dr. Suarez was the agent of Dr. Fabi, then the period of limitations has not run against Dr. Fabi on plaintiffs' claim of vicarious liability based on the act of Dr. Suarez.

Since we cannot conclude as a matter of law that plaintiffs' claims are barred by the statute of limitations, we must reverse the trial court's order granting partial accelerated judgment.

Reversed.

R. L. TAHVONEN, J., concurred.

BEASLEY, P.J. *(concurring).* I concur in the reasoning and the result reached by the majority in this case, but write separately since I believe that, upon remand, the trial judge, rather than the jury, should decide whether an agency relationship existed between defendant doctors for purposes of

the applicable statute of limitations period.[1] As I write in my opinion in *Blana v Spezia,*[2] which applies the new Michigan Court Rules, the resolution of factual disputes raised in determining whether the period of limitations applicable in medical malpractice cases has expired is a matter for the trial judge.

A motion for summary disposition based on the running of the applicable statute of limitations period is brought under MCR 2.116(C)(7). MCR 2.116(I)(3) addresses the resolution of disputed issues of fact involved in deciding motions for summary disposition and states:

> A court may, under proper circumstances, order immediate trial to resolve any disputed issue of fact, and judgment may be entered forthwith if the proofs show that a party is entitled to judgment on the facts as determined by the court. An immediate trial may be ordered if the grounds asserted are based on subrules (C)(1) through (C)(6), or if the motion is based on subrule (C)(7) and a jury trial as of right has not been demanded on or before the date set for hearing. *If the motion is based on subrule (C)(7) and a jury trial has been demanded, the court may order immediate trial, but must afford the parties a jury trial as to issues raised by the motion as to which there is a right to trial by jury.* [Emphasis added.]

The problem presented in the within case is whether the factual issue concerning the existence of an agency relationship, which, as the majority points out, must be resolved in order to properly apply the medical malpractice statute of limitations, raises an issue "as to which there is a right

[1] MCL 600.5805(4); MSA 27A.5805(4), MCL 600.5838(1); MSA 27A.5838(1).

[2] 155 Mich App 343; 399 NW2d 511 (1986).

to trial by jury." As the authors of the recent annotation of the Michigan Court Rules point out:

> If a jury trial has been timely demanded, the court may order an immediate jury trial of those issues under MCR 2.116(C)(7) "as to which there is a right to trial by jury." MCR 2.116(I)(3). *Not all issues that may be raised under MCR 2.116(C)(7) involve the right to jury trial (res judicata, for example), and the language quoted above from MCR 2.116(I)(3) is carefully worded to avoid a contrary implication.* [Emphasis added.][3]

I believe that factual disputes raised in applying the medical malpractice statute of limitations, just like factual determinations required for the application of the doctrine of res judicata, do not involve the right to a jury trial. I reach this conclusion under the new court rules, first of all, since I believe the highly efficient, economical immediate trial option provided in MCR 2.116(I)(3) for the resolution of factual disputes in motions for summary disposition would be rendered worthless in the medical malpractice statute of limitations situation if every factual dispute was required to be submitted to a jury upon a party's timely demand for a jury trial. Such a procedure would require the selection of a separate jury merely to resolve the statute of limitations issues. Judicial economy would not be served by such an unwieldy "immediate trial" procedure.

A sensible, pragmatic trial judge, facing the option of hearing a completely separate immediate jury trial on the statute of limitations factual disputes and then possibly having to hear a second jury trial on the full merits of the case, would, in proper pursuit of judicial economy, opt to conduct a single trial where one jury would decide both the

---

[3] Martin, Dean & Webster, Michigan Court Rules Practice, p 308.

statute of limitations issues and the merits of the malpractice claim. This single jury trial procedure might not be a troublesome result as applied to certain grounds for summary disposition raised under MCR 2.116(C)(7), such as those based on release or payment or assignment of the claim, since these grounds for summary disposition do not raise as substantial a risk of jury nullification of the law. However, in the medical malpractice statute of limitations situation, as I pointed out in *Blana, supra,* there is a more substantial risk that a jury, having heard the merits of an injured plaintiff's medical malpractice claim, will disregard the evidence and find that the period of limitations has not run in order to grant the injured plaintiff monetary relief. Specifically, in this case, a jury, having heard the evidence concerning the severity of Mrs. Whitmore's brachial plexus injury and perhaps feeling that the allegations of medical malpractice have been proved, may decide that the technicality of the expiration of the statute of limitations period should not bar plaintiffs from recovering damages and, thus, find that the necessary agency relationship existed regardless of the factual situation.

Thus, in deciding whether the medical malpractice period of limitations has expired, resolution of a factual issue, as to which there is a right to trial by jury, a trial judge, under MCR 2.116(I)(3), faces the predicament of choosing between inefficiently and wastefully conducting two separate jury trials or conducting a single jury trial where the risk is high that the jury will nullify the legislative intent embodied in the statute of limitations. MCR 2.116(I)(3) was not intended to create such a predicament for a trial judge facing a motion for summary disposition under the medical malpractice statute of limitations which involves some

factual disputes. In order to assure the legitimate goals of judicial efficiency and fair adjudication of medical malpractice statute of limitations issues, I believe the resolution of factual disputes should not be deemed to involve issues as to which there is a right to trial by jury for purposes of MCR 2.116(I)(3). Such medical malpractice statute of limitations fact issues present preliminary questions which should be decided solely by the trial judge.

This conclusion is supported by the fact that the risk of jury nullification presented in this medical malpractice situation is analogous to the risk that exists in allowing a jury to decide preliminary questions concerning the admissibility of evidence at trial. As I note in *Blana, supra,* p 353:

> A jury is deemed unable to hear certain evidence, such as an illegally obtained confession or hearsay evidence, decide that the evidence is inadmissible, and then fairly decide the main issue at trial, having heard the inadmissible evidence. Therefore, the preliminary question concerning the admissibility of evidence at trial, which often involves the resolution of material factual disputes, is left solely to the trial judge.

The right to a jury trial does not exist for the resolution of factual disputes which are necessary in order to decide issues concerning the admission of evidence at trial. The resolution of these factual disputes is left to the trial judge in order to assure judicial efficiency and fair adjudication of evidentiary matters. For the same reasons, the resolution of factual disputes which are necessary in order to decide issues concerning the application of the medical malpractice statute of limitations should be left solely to the trial judge.

In fact, the new Michigan Court Rules indicate

that such an expanded role for the trial judge in deciding preliminary issues involved in applying the medical malpractice statute of limitations is appropriate. Under the former general court rules, GCR 1963, 116.3 merely provided that a party may submit affidavits or other evidence in supporting or opposing a motion for accelerated judgment. The former court rule did not require a trial judge to consider the affidavits and other evidence in deciding an accelerated judgment motion. However, MCR 2.116(G)(5) expressly *requires* a trial judge to consider affidavits and other evidence in deciding a motion for summary disposition brought under MCR 2.116(C)(7). I believe that this change in the court rules indicates a broader role for the trial judge in deciding factual issues raised in a motion for summary disposition, especially, as discussed above, in a situation where the motion is based on the medical malpractice statute of limitations.

Since I believe the new court rules should be applied in this matter upon remand,[4] and since the resolution of factual disputes involved in applying the medical malpractice statute of limitations does not raise an issue as to which there is a right to trial by jury for purposes of MCR 2.116(I)(3), I would remand this matter to the trial judge for him to decide, as the trier of fact, whether the alleged mutual agency relationship existed between defendants.

[4] See MCR 1.102.