*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLES ABDULKARIM and SOUAD
GHRABY,

Plaintiffs-Appellees,

v

RONALD S. LEDERMAN, M.D., PLLC, doing
business as LEDERMAN KWARTOWITZ
CENTER FOR ORTHOPEDICS, and RONALD
S. LEDERMAN, M.D., and MARK
KWARTOWITZ, D.O.,

Defendants-Appellants,
and

ROYAL OAK SURGICAL CENTER, LLC,

Defendant.

UNPUBLISHED
October 24, 2019

No. 341950
Oakland Circuit Court
LC No. 2016-151835-NH

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

FORT HOOD, J. (*concurring*).

I concur in the result reached by the lead opinion, but given the amount of conflicting testimony regarding the potential standards of care, particularly with respect to delegation, I would choose to address defendants' veiled argument that they did not owe a duty in this case because placement of the grounding pad was delegated to operating room staff. Defendants focus much of their brief on appeal on the alleged lack of evidence concerning the standard of care, but underlying that argument is an implication that they could not owe a duty where the responsibility of placing grounding pads typically falls on staff. I would conclude that, in addition to the issue analyzed in the lead opinion, the trial court was also correct to rely on *Orozco v Henry Ford Hosp*, 408 Mich 248, 253; 290 NW2d 363, 365 (1980), as a separate ground for denying defendants' motion for summary disposition.

In *Orozco*, our Supreme Court held that a surgeon performing a surgery has a "non-delegable duty to see that the operation [is] performed with due care."[1]  *Orozco*, 408 Mich at 253.  Indeed, long settled caselaw from the Michigan Supreme Court recognizes that, under certain circumstances, physicians can be held responsible for the actions of their employees.  In *Barnes v Mitchell*, 341 Mich 7, 10, 11; 67 NW2d 208 (1954), the plaintiff sued the defendant chiropractor for negligence after he was severely burned when an employee of the defendant's office took an X-ray of the defendant's hands.  After the trial court granted the defendant's motion for a judgment notwithstanding the verdict, the Supreme Court observed that the employee was using the defendant's clinic and X-ray machine to administer treatment to the plaintiff, the defendant's patient, "and there is every reason to conclude that she thought she was furthering her employer's interest in so doing."  *Id*. at 12.  Even if the employee could be said to have exceeded the scope of her authority in administering the X-ray treatment to the plaintiff, the Court recognized that the defendant would not be absolved of liability for negligence.  *Id*. at 13.

The *Barnes* Court quoted language from an earlier decision in *Riley v Roach*, 168 Mich 294; 134 NW 14 (1912):

> "The phrase 'in the course or scope of his employment or authority,' when used relative to the acts of a servant, means while engaged in the service of his master, or while about his master's business."  [*Barnes*, 341 Mich at 13, quoting *Riley*, 168 Mich at 307-308.]

After considering additional precedent addressing "general principles controlling responsibility in master and servant cases[,]" the Supreme Court rejected the plaintiff's contention that a physician or doctor's responsibility is limited only to actions "committed by the assistant who is working under the direction of the doctor."  *Id*. at 17-18.

> 'A physician is responsible for an injury done to a patient through the want of proper skill and care in his assistant, and through the want of proper skill and care in his apprentice, agent, or employee.  The fact that a physician's assistant is a

---

[1] In *Orozco*, after the plaintiff suffered an injury to his testicle during surgery, the trial court granted the defendants' motion for directed verdict on the basis that expert evidence of the standard of care was not presented, the Court of Appeals affirmed, but the Michigan Supreme Court reversed.  *Orozco*, 408 Mich at 249.  The defendants had argued that the plaintiff did not present evidence as to the standard of care of one of the doctors operating on the plaintiff.  *Id*. at 251.  Addressing the argument concerning the standard of care, the Supreme Court noted that the plaintiff testified that he heard one of the physicians operating on him admit to making a mistake during surgery, and because the surgeon regarding whom the standard of care was at issue was "in charge of the operation[,]" even if he did not make the statement himself, he could not delegate the duty to ensure that the surgery was performed with due care.  *Id*. at 251, 253.  Because the plaintiff presented the fact of the injury, medical expert testimony explaining what caused the injury and the admission by one of the operating doctors, the Supreme Court concluded that the trial court erred in granting a directed verdict in favor of the defendants.  *Id*. at 250-251, 253.

member of the same or a similar profession does not make the rule of respondeat superior inapplicable, *and a physician is liable not only for negligence of laymen employed by him, but also for the negligence of nurses or other physicians in his employ.*' [*Id*. at 18, quoting 70 CJS Physicians and Surgeons, § 54, p 978 (emphasis added).]

Considering precedent from other states applying the theory of respondeat superior to physicians and surgeons and holding physicians liable for the actions of their employees or assistants—even if such actions exceeded the scope of their authority—the Supreme Court stated that because there were no state statutory provisions "applicable to the question presented to this Court," the common law was determinative and could only be abandoned by "legislative enactment rather than by a decision of this Court." *Id*. at 20.[2] The Supreme Court ultimately concluded that "the defendant's negligence in this case was established" given that the record supported the conclusion that the defendant authorized the X-ray treatment to be performed on plaintiff, and evidence established that the employee administered the X-ray treatment "within the scope of her employment and to further the interest of the defendant rather than her own interest." *Id*. at 20-21. Under such circumstances, the Supreme Court reversed the trial court's judgment for the defendant notwithstanding the verdict. *Id*. at 21.

More recently, in *Laster v Henry Ford Health Sys*, 316 Mich App 726, 734-735; 892 NW2d 442 (2016), this Court, in the context of considering whether a hospital was vicariously liable for the alleged negligence of a physician who worked as an independent contractor, set forth the governing legal principles with respect to respondeat superior and vicarious liability.

Generally, Michigan law will impose liability upon a defendant only for his or her own acts of negligence, not the tortious conduct of others. However, an exception exists under the theory of respondeat superior, wherein an employer may be liable for the negligent acts of its employee if the employee was acting within the scope of his employment. *Hamed v Wayne Co*, 490 Mich 1, 10–11; 803 NW2d 237 (2011); *Hekman Biscuit Co v Commercial Credit Co*, 291 Mich 156, 160; 289 NW 113 (1939).

Similarly, in the absence of an employer-employee relationship, vicarious liability may also attach through the concept of agency. As this Court has explained:

A principal may be vicariously liable to a third party for harms inflicted by his or her agent even though the principal did not participate by act or omission in the agent's tort. Vicarious liability is indirect responsibility imposed by operation of law. Courts impose indirect responsibility on the principal for his or her agent's torts as a matter of public policy, but the principal, having committed no tortious

---

[2] My independent research of the pertinent provisions of the Revised Judicature Act, MCL 600.101 *et seq*., also did not reveal any statutory provisions on point.

act, is not a "tortfeasor" as that term is commonly defined. Because liability is imputed by law, a plaintiff does not have to prove that the principal acted negligently. Rather, to succeed on a vicarious liability claim, a plaintiff need only prove that an agent has acted negligently.[3] Concomitantly, if the agent has not breached a duty owed to the third party, the principal cannot be held vicariously liable for the agent's actions or omissions. [*Laster*, 316 Mich App at 734-735, quoting *Bailey v Schaaf (On Remand)*, 304 Mich App 324, 347; 852 NW2d 180 (2014) (quotation marks and citations omitted), vacated in part on other grounds 497 Mich 927 (2014) (footnote added).]

In *Whitmore v Fabi*, 155 Mich App 333, 338; 399 NW2d 520 (1986),[4] this Court, citing *Barnes*, 341 Mich at 19, observed that "[p]hysicians and surgeons, like other persons, are subject to the law of agency." Physicians and Surgeons, § 130 (recognizing that a physician has a "nondelegable duty of due care to his or her patient and is responsible for an injury done to a patient through the lack of proper skill and care by his or her physician's assistant, agent, nurse or employee.")

A physician or other health-care provider generally is not liable for the negligence of hospital or other nurses, attendants, or interns, who are not his or her employees, particularly where the health-care provider has no connection therewith. . . . Vicarious liability depends on the right to direct or control the actions of another, and thus, an operating surgeon can be held liable for the acts of those assisting, even where the surgeon has no voice in their selection. [70 CJS § 131.]

Moreover, whether an agency relationship exists, and the scope of the relationship, remain factual questions reserved to the trier of fact. *Whitmore*, 155 Mich App at 338. In an agency relationship, "it is the power or ability of the principal to control the agent that justifies the imposition of vicarious liability." *Laster*, 316 Mich App at 735. Where there is an absence of control, the actions of an independent contractor will not be imputed to an employer. *Id*. See also 70 CJS

In the present case, defendants' implied contention that, as the surgeons performing plaintiffs' arthroscopic shoulder surgery, they had no duty or responsibility with respect to the placement of the grounding pad is disingenuous and unpersuasive. This is particularly so given that the grounding pad and the electrosurgical machine it is attached to play a pivotal role in the

---

[3] The existing record is replete with evidence that whoever placed the grounding pad did so negligently, particularly given that Dr. Corn opined that the cause of plaintiff's burn was the incorrect placement of the grounding pad and Dr. Kohen shared his view that incorrect placement of the grounding pad could be a possible cause of the burn.

[4] I recognize that because *Whitmore* was released before November 1, 1990, it is not binding precedent, but is considered persuasive authority. MCR 7.215(J)(1); *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

surgeon performing surgery on a patient. For example, during his testimony, Dr. Kwartowitz testified in more detail concerning the operation of the electrosurgical unit, stating that it has a setting for "coagulation" as well as for "cut[ting]" and the number that the surgeon sets on the machine "will really be dependent on how much bleeding there is at the time of the surgery." The purpose of the electrosurgical machine, according to Dr. Kwartowitz is to "control any bleeding."

On the machine itself, there are controls on a hand unit attached to the machine which a physician holds and can use to adjust the power and frequency settings on the machine. Dr. Kwartowitz acknowledged that the electrosurgical machine can cause burns, and that the machine functions by sending electricity through the patient, which also passes through the patient's heart. Dr. Lederman also testified that the electrosurgical machine has a handpiece that is held like a pencil, with a metal tip. He went on to elaborate how the device works:

> You press down the button that generates the electrical current, which creates an audible sound to let you know that there is thermal current being delivered and you use that to typically cauterize blood vessels to avoid bleeding.

The electrosurgical machine also has the grounding pad attached, which is placed on the patient during surgery. During a shoulder surgery, the electrosurgical machine is also used to "ablate hypertrophic tissue" so that the surgeon operating can see the structures in the patient's body needed to perform the surgery. Given the important and serious role of the electrosurgical machine during plaintiff's surgery, defendants' essential disclaiming of complete responsibility with respect to the placement of the grounding pad—which connects plaintiff to the machine—is not persuasive, particularly as the Supreme Court has stated that a surgeon cannot delegate his or her responsibility to ensure that a surgery is performed with due care. *Orozco*, 408 Mich at 253.

Pursuant to *Barnes* and *Laster*, because the record contains evidence that the pad was placed by a third party under defendants' supervision and the grounding pad was incorrectly applied, genuine issues of material exist concerning not only whether (1) defendants breached the standard of care by not ensuring that the grounding pad was properly placed on plaintiff before beginning surgery, but whether (2) liability for the actions of the individual who placed the grounding pad on plaintiff can be imputed to defendants. Again, Michigan law supports the imposition of liability on defendants for the actions of another in placing the grounding pad, either under a respondeat superior theory or pursuant to vicarious liability. *Barnes*, 341 Mich at 13, 18; *Laster*, 316 Mich App at 734-735. Moreover, the existence of an agency relationship, as well as the nature of the relationship, are questions reserved to the factfinder. *Whitmore*, 155 Mich App at 338.

/s/ Karen M. Fort Hood